Howard M. Levine, Oregon State Bar No. 800730 *(pro hac vice)*
Timothy J. Coleman, Oregon State Bar No. 841970 *(pro hac vice)*
SUSSMAN SHANK, LLP
1000 SW Broadway, Ste. 1400
Portland, OR  97205
Telephone:     (503) 227-1111
Email:             hlevine@sussmanshank.com
                       tcoleman@sussmanshank.com

Paul J. Pascuzzi, State Bar No. 148810
Jason E. Rios, State Bar No. 190086
Mikayla E. Kutsuris, State Bar No. 339777
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Telephone:     (916) 329-7400
Facsimile:      (916) 329-7435
Email:             ppascuzzi@ffwplaw.com
                       jrios@ffwplaw.com
                       mkutsuris@ffwplaw.com

Attorneys for Reser's Fine Foods, Inc.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>RIZO-LÓPEZ FOODS, INC.,<br><br>Debtor in Possession. | Case No. 25-25004<br><br>Chapter 11<br><br>DCN:  FWP-1<br><br>Date:       February 25, 2026<br>Time:      11:00 a.m.<br>Location: Courtroom 35 (Dept. C)<br>Judge:     Hon. Christopher M. Klein |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO CONTINUE LITIGATION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON TO RECOVER INSURANCE PROCEEDS**

Creditor, RESER'S FINE FOODS, INC. d/b/a FRESH CREATIVE FOODS ("Reser's"), hereby moves this Court for an order pursuant to 11 U.S.C. § 362(d)(1), Federal Rules of

Bankruptcy Procedures 4001(a), and Local Bankruptcy Rule 9014-1(f)(1) for Relief from the Automatic Stay to allow Reser's to continue litigation in the United States District Court for the District of Oregon naming Rizo-López Foods, Inc. ("Debtor") as a party, but only for the purpose of liquidating its claim and pursuing recoveries from insurance.

## I.　JURISDICTION AND VENUE

1.　This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. These matters have been referred to this Court by the U.S. District Court, Eastern District of California, pursuant to 28 U.S.C. § 157(a) and the Orders] Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, Gen. Order Nos. 182 (May 14, 1985) and 223 (E.D. Cal. Oct. 22, 1987). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.　BACKGROUND AND PARTIES

2.　On September 15, 2025, the Debtor filed this case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). The Debtor is, and has been since the Petition Date, a debtor in possession and no trustee has been appointed.

3.　Reser's is a creditor of the Debtor, having purchased cotija cheese from Castle Importing, Inc. ("Castle") that Castle had purchased from the Debtor prior to the Petition Date.

4.　The cotija cheese Reser's purchased on October 28, 2023, November 27, 2023, December 27, 2023, and January 17, 2023, was used in food products that were manufactured and then sold to retailers nationwide.

5.　On January 3, 2024, the Hawaii State Department of Health's Food and Drug Branch tested a sample of Rizo Bros Aged Cotija as part of a routine sampling program and found it was contaminated with Listeria monocytogenes.

6.　In response to this finding, Debtor issued a recall of Rizo Bros. Aged Cotija Mexican Grating Cheese (8oz) on January 11, 2024 (the "Recall"), which included the following statement:

> Rizo Lopez Foods, Inc. of Modesto, CA is recalling a total of 344 cases of Aged Cotija Mexican Grating Cheese (8oz), UPC 72724200043 batch number 4DW-23318 because it has the potential to be contaminated with Listeria monocytogenes, an organism which can cause serious and sometimes fatal

infections in young children, frail or elderly people, and others with weakened immune systems. Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, Listeria infection can cause miscarriage and stillbirths among pregnant women.

Aged Cotija Mexican Grating Cheese (8oz) was distributed nationwide through distributors.

7. As a result of the Recall, Reser's suffered damages of no less than $3,698,008.54.

8. On November 22, 2024, Reser's filed a complaint against the Debtor and Castle Importing in the United States District Court for the District of Oregon (Case no. 3:24-cv-01963-SB) (the "District Court Case") seeking damages resulting from the Listeria contamination and demanding a jury trial (the "Complaint"). The case is captioned as:

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

RESER'S FINE FOODS, INC. d/b/a
FRESH CREATIVE FOODS,

Plaintiff,

vs.

RIZO-LOPEZ FOODS, INC., and CASTLE IMPORTING, INC.,

Defendants.

A copy of the Complaint is attached to the Exhibit List as **Exhibit** 1 and incorporated herein by reference. As a result of the Debtor's chapter 11 case, the District Court Case was stayed.

9. As stated in paragraph 36 of the Complaint, Reser's has a claim against the Debtor for no less than $3,698,008.54 in damages (plus attorney fees, costs, other damages, expenses) through November 22, 2024, related to product reimbursement and product disposal due to said Recall. Reser's has timely filed a Proof of Claim that it is informed and believes has been designated as Claim No. 39 on the Clerk's Claims Register and Claim No. 93 on the Donlin Claim Register.

///

10. Defendant Castle Importing, Inc., ("Castle") the other defendant, filed cross claims against the Debtor alleging, among other things, that the Debtor is responsible for any losses Castle suffered. That claim is still pending.

### III. INSURANCE POLICIES

11. As discussed below, the Debtor has insurance policies that cover all or part of Reser's losses. Although it might be asserted that the insurance policies themselves may be assets of the Debtor's bankruptcy estate, the policies' proceeds are not estate assets and are available only to pay claims by Reser's or similarly situated damaged parties to satisfy, in whole or in part, claims against the Debtor.

12. The Debtor has several insurance policies which provide general commercial liability coverage. Because of the timing of certain claims, there is some question as to whether the 2023-2024 or 2024-2025 policy period applies to Reser's claims. While the total amount of applicable coverage does not change between the two periods, the carriers involved change slightly. The following chart therefore shows the coverage breakdown for both policy periods:

| CARRIER | 2023-2024 | 2024-2025 |
|---|---|---|
| Arch | Policy # ZAGLB1100403<br>Primary coverage<br>$1M in coverage | Policy # ZAGLB1100404<br>Primary coverage<br>$1M in coverage |
| Indian Harbor | NA | Policy # SXS0064967<br>Excess over Arch; $1M in coverage |
| Great American | Policy # TUU 0738671 10<br>Excess over Arch<br>$10M in coverage | Policy # TUU 0738671 11<br>Excess over Arch and Indian Harbor<br>$9M in coverage |
| Everest | Policy # XC1EX00444-231<br>Excess over Great American<br>$10M in coverage | Policy # XC5EX01961-241<br>Excess over Great American<br>$10M in coverage |
| Endurance | Policy # ELD30002726502<br>Excess over Great American and Everest<br>$10M in coverage | Policy # ELD30002726503<br>Excess over Great American and Everest<br>$10M in coverage |
| **TOTAL COVERAGE** | **$31 Million** | **$31 Million** |

1　　　　The foregoing are collectively, the "Policies." Copies of the Declaration pages for each of the Policies showing the policy numbers and extent of coverage are attached to the Exhibit List as composite **Exhibit 2** and incorporated herein by reference. Discovery regarding the Policies is ongoing.

13.　　As the above chart shows, Arch provided the primary layer of insurance coverage while Indian Harbor, Great American, Everest, and Endurance (in that order) provided excess coverage above the Arch policy. Thus, for example, if a claim for damages was made where the 2023-2024 policies applied, Arch's policy would provide the initial coverage. However, if the value of the claim exceeded Arch's $1,000,000.00 policy limits, Great American's policy would kick in and provide coverage of up to $10,000,000.00 in addition to Arch's $1,000,000.00. If the claim's value was greater than the combined $11,000,000.00 available from Arch and Great American, Everest's policy would be triggered, providing another $10,000,000.00 in coverage. Finally, if the value of the claim exceeded the $21,000,000.00 available under the first three policies, the Endurance policy's $10,000,000.00 in coverage could then be applied to cover the claim-related damages. Regarding the Debtor's bankruptcy, there seems to be a question as to what claims trigger the policies and thus how to categorize the policies when determining the Debtor's assets.

14.　　The Arch policy states as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies." Further, the excess polices all contain language similar to the following language contained within the Great American policy: "We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere."

15.　　Thus, all of the Policies only apply in the event that a claim for personal injury or property damage is made against the Debtor. In any other event – such as claims made against the Debtor for business debts it has incurred – these Policies have no applicability. Accordingly, in

1　terms of being an asset, the Policies cannot be used to satisfy any of the Debtor's obligations apart
2　from the claims which have been made by Reser's, Sargento, and others with similar liability
3　claims.

4　　　16.　Moreover, all of the Policies are what are known as "third-party policies." The
5　policies provide coverage and requirements to pay for losses only if the injured claimants, such as
6　Reser's, prove losses caused by the Debtor insured and that the losses are covered under the
7　Policies. Such losses are paid directly to the injured claimant, here Reser's, in exchange for a full
8　or partial release or a satisfaction of judgment to the extent paid. Under no circumstances do the
9　Policies provide for payment of money to the Debtor insured. Thus, while the policies do protect
10　the Debtor from potential liabilities to the third parties arising from the losses, the Policies'
11　proceeds are not assets of the bankruptcy estate. Rather, the Policies provide coverage to pay the
12　losses in question and thus protect the Debtor from further liability arising from Reser's claims.
13　Other than proceeding to a judgment or order against the Debtor to recover the Policies' proceeds,
14　there are no other means for Reser's to access the Policies' proceeds.

15　　　17.　Reser's understands from Debtor's counsel that the Debtor has no claims under any
16　of the Policies for indemnity, reimbursement, or under any other theory. Accordingly, the only
17　entities that could recover under the Policies are recall creditors, such as Reser's, whose claims
18　against the Debtor are covered by the Policies.

19　　　18.　Reser's understands there may be disputes about the coverage under the policies and
20　the total applicable limits which may be applied to the subject claims. To wit, on October 24, 2024,
21　and May 30, 2025, Great American sent a reservation of rights letter advising Rizo that certain
22　policy exclusions may limit the amount of available coverage. Similarly, on April 17, 2024, and
23　June 28, 2024, Arch sent letters wherein they informed Rizo that certain policy provisions reduced
24　the available policy limits. However, it is important to note than none of the applicable carriers
25　have denied coverage entirely, meaning the policies are still a viable avenue to cover claims made
26　by Reser's and similarly-positioned parties.

27　　　19.　Reser's counsel has conferred with counsel for the Unsecured Creditors Committee
28　which has not yet made a determination as to whether it will assert the insurance proceeds are estate

1  property. Reser's counsel has also conferred with the Debtor's counsel which is inclined to
2  recommend to the Debtor that it stipulate to allow Reser's to proceed with the Complaint and the
3  District Court case.

4      20. Reser's is requesting relief from the automatic stay so that the District Court can (a)
5  liquidate Reser's claim against the Debtor as part of the process to obtain insurance proceeds under
6  the Polices (b) determine Reser's rights to be paid for its claims from available insurance proceeds
7  that protect the Debtor, and (c) receive payment from the insurers and the Policies.

8      21. Reser's will not seek to enforce a monetary recovery against the Debtor, except to
9  the extent necessary to recover under the Policies and to liquidate its claim in this case. Based on
10 the documents Reser's has reviewed, there are no deductibles or self-insured retentions that would
11 require payments from the Debtor. Notwithstanding anything to the contrary in this Motion,
12 Reser's would retain its unsecured claims against the Debtor to the extent Reser's claims are not
13 satisfied in full from the proceeds under the Policies.

### IV. POINTS AND AUTHORITIES

15     22. Upon the filing of a bankruptcy petition, section 362 of the Bankruptcy Code
16 automatically stays, among other things, the commencement or continuation of any proceeding
17 against a debtor or "to recover a claim against the debtor that arose before the commencement of
18 the case..." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that
19 protect both debtor and creditor interests, including, among other things, "to forestall the depletion
20 of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid
21 interference with the orderly liquidation or rehabilitation of the debtor." *In re Manley Toys Ltd.*,
22 2020 Bankr. LEXIS 902, * 13 (Bankr. N.J. 2020).

23     23. Section 362(d) of the Bankruptcy Code authorizes the Court to grant relief from the
24 automatic stay for cause. 11 U.S.C. § 362(d)(1). Section 362(d)(1) specifically provides that "[o]n
25 request of a party in interest and after notice and a hearing, the court shall grant relief from the stay
26 provided under subsection (a) of this section, such as by terminating, annulling, modifying, or
27 conditioning such stay…for cause…" *Id*. Although the Bankruptcy Code itself does not define
28 "cause," courts determine whether cause exists to lift the automatic stay on a case-by-case basis.

*See MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985); *see also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). To determine whether cause exists, courts in the Ninth Circuit typically apply twelve factors described as the "Curtis factors."[1] *See Kronemyer v. Am. Contractors Indem. Co., (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (finding that the *Curtis* factors are "appropriate, nonexclusive factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum"); *see also In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

24.　　Reser's submits that granting relief from stay under sections 105(a) and 362(d) of the Bankruptcy Code is appropriate under the circumstances and will reduce any future unnecessary and burdensome litigation over insurance proceeds in this court. Below is Reser's analysis of each of the *Curtis* factors:

　　　　a. *Whether the relief will result in a partial or complete resolution of the issues*. If relief is granted, Reser's rights to policy proceeds, cross claims between Castle and Reser's, and liquidation of Reser's claim will be done through the District Court, resolving in whole or in large part virtually all issues involving Reser's.

　　　　b. *The lack of any connection with or interference with the bankruptcy case.* The Debtor will have to participate in discovery and cooperate as required by the terms of its Policies,

---

[1] The *Curtis* factors are: (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foregoing proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and, (12) the impact of the stay on the parties and the balance of hurt. *See In re Curtis*, 40 B.R. at 799-801.

but it would have to fulfil those obligations regardless of whether the disputes are resolved in this Court or in the District Court. The applicable Policies include a duty to defend, and thus the insurers are obligated to pay all costs and attorney's fees to defend the action.

  c. *Whether the foregoing proceeding involves the debtor as a fiduciary.* This is not a relevant factor.

  d. *Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases*; The District Court is fully capable of, and has extensive experience in, hearing and resolving tort and insurance claims and disputes.

  e. *Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation*; Some insurers have denied coverage; others have only responded with reservation of rights letters.

  f. *Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.* The Debtor is the conduit through which Reser's can obtain policy proceeds. It will be a party and have to fulfil its obligations under the Policies, again, regardless of whether litigation occurs in this Court or in the District Court.

  g. *Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.* To the contrary, Reser's recovery from a third party—the insurers substantially benefits the interest of creditors because it would reduce Reser's claim in the estate on a dollar for dollar basis for any recovery Reser's receives under the Policies.

  h. *Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);* Section 510(c) equitable subordination is not implicated in this situation.

  i. *Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)* Judicial liens are not implicated in this situation.

  j. *Whether the interest of judicial economy and the expeditious and economical determination of litigation for the parties.* Litigation in the District Court started in 2024. Prior to the Petition Date, the District Court had entered Scheduling Orders (attached as **Exhibit 3** to the

1　　Exhibit List, incorporated herein by reference) with a trial not yet scheduled, so that case is on pace

2　　for resolution. The scheduling order will need to be revised due to the delay caused by the Debtor's

3　　chapter 11 filing. In addition, because Reser's requested a jury trial, and is entitled to one under the

4　　Seventh Amendment, the Bankruptcy Court, as an Article I court, could not conduct a jury trial

5　　without the full consent of the parties. At best, the case would be transferred to the US District

6　　Court for the Eastern District of California, where the case would have to largely begin again,

7　　causing further delays.

8　　　　　　k. *Whether the foreign proceedings have progressed to the point where the parties*

9　　*are prepared for trial*. As noted above, the scheduling order will need to be revised due to the delay

10　caused by the automatic stay.

11　　　　　　l. *The impact of the stay on the parties and the balance of hurt.* The only entities

12　benefitting from the stay are the insurance carriers, who themselves are not in bankruptcy. The

13　Debtor is implicated regardless of whether insurance litigation occurs in this Court or in the District

14　Court. Creditors will be benefitted to the extent the Policy proceeds pay Reser's and reduce its

15　claim against the Debtor. On balance, and by a substantial margin, the estate and creditors will be

16　benefitted by granting Reser's the requested relief.

17　　　　25.　　Under § 362(d)(1), bankruptcy courts have routinely granted relief to permit

18　personal injury plaintiffs to prosecute their claims in state court and to limit their collection efforts

19　to the available insurance benefits." *In re Glunk*, 342 B.R. 717, 740 (Bankr. E.D. Pa. 2006); *In re*

20　*Hudson Oil Co*., 100 B.R. 72 (Bankr. D. Kan. 1989) (stating that, "courts generally will allow

21　creditors relief to go against a debtor's insurance carrier").

22　　　　26.　　The Ninth Circuit has long held that a "desire to permit a state action to proceed in

23　a state tribunal has been recognized as a proper cause to grant relief from the automatic stay[.]"

24　See, e.g., *In re Calsol, Inc*., 419 F.App'x. 753, 754 (9th Cir. 2011) (affirming a lift-stay order where

25　creditors presented "[only] three exhibits: (1) copies of the complaints filed by [the creditors] in

26　their state court actions, (2) a list of the other defendants in the state court actions, and (3) a list of

27　the insurance carriers and policy numbers that relate to [the creditors'] claims against [the debtor]").

28　See also *In re Judkins*, 28 F.3d 106, at *2 (9th Cir. 1994) ("Cause may exist where the party

requesting relief from the automatic stay seeks to litigate state law claims in state court."); *In re Wade*, 978 F.2d 1266, at *2 (9th Cir. 1992) (same); *In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir.1986) ("A clear congressional policy exists to give state law claimants a right to have claims heard in state court.") (emphasis added); *In re Budd*, 2011 WL 4485190, at *5 (Bankr. App. 9th Cir. July 12, 2011) ("[Prior Ninth Circuit precedent] affirmed grants of relief from stay that allowed the parties to pursue their state law claims and defenses in pending state court proceedings."); *Winding Creek Solar LLC v. P. Gas and Electric Co.*, 2021 WL 2987409, at *4 (N.D. Cal. July 15, 2021) ("The Ninth Circuit has recognized that allowing a state action to proceed in a state tribunal can be proper cause to grant relief from the automatic stay."); *In re Suissa,* 2019 WL 11717119, at *9 (C.D. Cal. July 2, 2019) (same); *In re Van Zandt*, 2014 WL 458204, at *4 (N.D. Cal. Jan. 27, 2014) ("Deferring to the state court is particularly appropriate where, as here, there are non-debtor co-defendants in the state court proceeding against whom the state court action is not stayed.") (emphasis added); *In re PG & E Corp.*, 2019 WL 3889247, at *2 (Bankr. N.D. Cal. Aug. 16, 2019) ("[C]ause exists to grant relief from stay to advance these cases . . . All arguments to the contrary ignore the urgent need for resolution, the inherent suitability of the state court to bring about that resolution, and the importance of that resolution to the future conduct of these bankruptcy cases."). The same reasoning applies here, where the underlying tort claims are filed in District Court under diversity jurisdiction, rather than in state court. Both are appropriate non-Bankruptcy forums best suited to resolve these issues

27. Modifying the stay would dramatically alleviate the burden of litigation in this Court, and allows for the Debtor, and the Debtor's professionals to have more focused attention on the anticipated Asset Purchase Agreement the Debtor claims is forthcoming. Further, modification of the stay to allow the District Court case to proceed to mediation or trial, will assist in facilitating final resolution of the largest claims in this case and the events that triggered this chapter 11 filing.

## V. WAIVER OF THE 14 DAY STAY IS APPROPRIATE PURSUANT TO BANKRUPTCY RULE 4001(A)(4).

Bankruptcy Rule 4001(a)(4) provides that an order granting a motion for relief from the automatic stay is stayed until the expiration of fourteen (14) days after the order is entered, unless

the court orders otherwise. *See* Fed. R. Bankr. P. 4001(a)(4). Reser's requests that the 14-day stay period imposed by Fed. R. Bankr. Proc. 4001(a)(4) be waived so that the parties can move forward immediately upon entry of the Bankruptcy Court order approving this Motion.

## VI. CONCLUSION

WHEREFORE, Reser's respectfully requests the Court enter the Proposed Order, substantially in the form attached as **Exhibit 4** to the Exhibit List, granting the relief requested in the Motion and such other relief as is appropriate.

Dated: January 23, 2026  FELDERSTEIN FITZGERALD WILLOUGHBY PASCUZZI & RIOS LLP

By: */s/ Jason E. Rios*
Jason E. Rios
Paul J. Pascuzzi
Mikayla E. Kutsuris
Attorneys for Reser's Fine Foods, Inc.

Dated: January 23, 2026  SUSSMAN SHANK, LLP

By: */s/ Howard M. Levine*
Howard M. Levine
Timothy J. Coleman
Attorneys for Reser's Fine Foods, Inc.

12

Case No. 25-25004
Motion for Relief from Stay