90

1   Howard M. Levine, Oregon State Bar No. 800730 *(pro hac vice)*
    Timothy J. Coleman, Oregon State Bar No. 841970 *(pro hac vice)*
2   SUSSMAN SHANK, LLP
    1000 SW Broadway, Ste. 1400
3   Portland, OR 97205
    Telephone:    (503) 227-1111
4   Email:        hlevine@sussmanshank.com
                  tcoleman@sussmanshank.com
5
    Paul J. Pascuzzi, State Bar No. 148810
6   Jason E. Rios, State Bar No. 190086
    Mikayla E. Kutsuris, State Bar No. 339777
7   FELDERSTEIN FITZGERALD
      WILLOUGHBY PASCUZZI & RIOS LLP
8   500 Capitol Mall, Suite 2250
    Sacramento, CA 95814
9   Telephone:    (916) 329-7400
    Facsimile:    (916) 329-7435
10  Email:        ppascuzzi@ffwplaw.com
                  jrios@ffwplaw.com
11                mkutsuris@ffwplaw.com
12
    Attorneys for Reser's Fine Foods, Inc.
13
                      UNITED STATES BANKRUPTCY COURT
14
                       EASTERN DISTRICT OF CALIFORNIA
15
                             SACRAMENTO DIVISION
16

| | |
|---|---|
| In re | Case No. 25-25004 |
| RIZO-LÓPEZ FOODS, INC., | Chapter 11 |
| Debtor in Possession. | DCN: FWP-1 |
| | Date:      February 25, 2026<br>Time:      11:00 a.m.<br>Location:  Courtroom 35 (Dept. C)<br>Judge:     Hon. Christopher M. Klein |

**EXHIBITS IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO CONTINUE LITIGATION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON TO RECOVER INSURANCE PROCEEDS**

26          Creditor Reser's Fine Foods, Inc. ("Creditor"), hereby submits the following exhibits in

27  support of its *Motion to for Relief from the Automatic Stay to Continue Litigation in the United*

28  *States District Court for the District of Oregon to Recover Insurance Proceeds*.

| Exhibit | Title | Pages |
|---------|-------|-------|
| 1 | Complaint filed in the Oregon District Court; Case No. 3:24-cv-01963-SB on November 22, 2024 | 3 – 54 |
| 2 | Commercial General Liability Coverage for Rizo Lopez Foods, Inc. for 2023 | 55 – 78 |
| 3 | Further Joint Status Report and Joint Stipulation regarding Case Scheduling filed in the Oregon District Court; Case No. 3:24-cv-01963-SB on August 20, 2025 | 79 – 86 |
| 4 | Proposed Order | 87 - 90 |

Dated: January 23, 2026          FELDERSTEIN FITZGERALD WILLOUGHBY
                                 PASCUZZI & RIOS LLP


                        By:    /s/ Jason E. Rios
                               Jason E. Rios
                               Paul J. Pascuzzi
                               Mikayla E. Kutsuris
                               Attorneys for Reser's Fine Foods, Inc.

Dated: January 23, 2026          SUSSMAN SHANK, LLP


                        By:    /s/ Howard M. Levine
                               Howard M. Levine
                               Timothy J. Coleman
                               Attorneys for Reser's Fine Foods, Inc.

# EXHIBIT 1

**Timothy J. Coleman, OSB No. 841970**
tcoleman@sussmanshank.com
Sean R. McClendon, OSB No. 031215
smcclendon@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, Oregon 97205
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
        *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RESER'S FINE FOODS**,** INC. d/b/a FRESH CREATIVE FOODS, | Case No. _____ |
| | COMPLAINT |
| Plaintiff, | |
| | Property Damage Action (28 U.S.C. § 1332) |
| vs. | |
| RIZO-LOPEZ FOODS, INC., and CASTLE IMPORTING, INC., | Demand for Jury Trial |
| Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, RESER'S FINE FOODS, INC. d/b/a FRESH CREATIVE FOODS (hereinafter referred to as "Reser's"), and for its Complaint against RIZO-LOPEZ FOODS, INC. (hereinafter referred to as "Rizo-Lopez") and CASTLE IMPORTING, INC. (hereinafter referred to as "Castle"), states as follows:

**Page 1 - COMPLAINT**

Exhibit 1 Page 1 of 51

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

## PARTIES

1.      Reser's is an Oregon corporation with its principal offices located in Beaverton, Oregon.

2.      RMJV, LP was a limited partnership formed in Delaware with its headquarters and principal offices located in Beaverton, Oregon.  RMJV operated as a subsidiary of Reser's.

3.      On December 31, 2023, RMJV merged with Reser's Fine Foods, Inc. to form Reser's Fine Foods, Inc. d/b/a Fresh Creative Foods.

4.      Rizo-Lopez is a California corporation with its principal place of business located in Modesto, California, and at all times material hereto was authorized to, and was in fact, doing business in the state of Oregon.

5.      Castle is a California corporation with its principal place of business located in Sacramento, California, and at all times material hereto was authorized to, and was in fact, doing business in the state of Oregon.

## JURISDICTION & VENUE

6.      The district court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) and 1332(c)(1) as the instant matter is a controversy between citizens of different states, the value of which exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

7.      Plaintiff Reser's is a corporation incorporated under the laws of Oregon and its principal place of business is in Oregon.

8.      Defendant Rizo-Lopez is a corporation incorporated under the laws of California and its principal place of business is in California. Rizo-Lopez is a citizen of California.  However,

**Page 2 - COMPLAINT**

Exhibit 1 Page 2 of 51

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

at all times material to the instant lawsuit, it was authorized and doing business within the state of Oregon.

9.      Defendant Castle is a corporation incorporated under the laws of California and its principal place of business is in California. Castle is a citizen of California.  However, at all times material to the instant lawsuit, it was authorized and doing business within the state of Oregon.

10.     Venue is properly before this Court under 28 USC § 1391(a) (3), because Defendants are subject to personal jurisdiction as they were conducting substantial business within Washington County, Oregon.

## BACKGROUND

11.     At all times relevant to the instant lawsuit, Rizo-Lopez manufactured and sold cotija cheese.

12.     At all times relevant to the instant lawsuit, Castle purchased cotija cheese from Rizo-Lopez.

13.     At all times relevant to the instant lawsuit, after purchasing cotija cheese from Rizo-Lopez, Castle processed the Rizo-Lopez cheese to create crumbled/grated cheese for sale to other parties, including Reser's.

14.     RMJV manufactured ready-to-eat food items which were distributed to retailers nationwide under the brand name Fresh Creative Foods.

15.     On October 28, 2023, November 27, 2023, and December 27, 2023, RMJV purchased cotija cheese from Castle.

16.     On December 31, 2023, RMJV merged with Reser's Fine Foods to create Reser's Fine Foods, Inc. d/b/a Fresh Creative Foods. Following the merger, Reser's manufactured ready-

**Page 3 - COMPLAINT**

Exhibit 1 Page 3 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

to-eat food items which were distributed to retailers nationwide under the brand name Fresh Creative Foods, including Reser's home state of Oregon.

17.    On January 17, 2024, Reser's purchased cotija cheese from Castle.

18.    The cotija cheese purchased on October 28, 2023, November 27, 2023, December 27, 2023, and January 17, 2023, was used in food products that were manufactured and then sold to retailers nationwide.

19.    On January 3, 2024, the Hawaii State Department of Health's Food and Drug Branch tested a sample of Rizo Bros Aged Cotija as part of a routine sampling program and found it was contaminated with Listeria monocytogenes (hereinafter "L. mono.").

20.    In response to this finding, Rizo-Lopez issued a recall of Rizo Bros. Aged Cotija Mexican Grating Cheese (8oz) on January 11, 2024, which included the following statement:

> Rizo Lopez Foods, Inc. of Modesto, CA is recalling a total of 344 cases of Aged Cotija Mexican Grating Cheese (8oz), UPC 72724200043 batch number 4DW-23318 because it has the potential to be contaminated with Listeria monocytogenes, an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, Listeria infection can cause miscarriage and stillbirths among pregnant women.
>
> Aged Cotija Mexican Grating Cheese (8oz) was distributed nationwide through distributors. *See* Exhibit 1.

21.    Despite the UPC code matching the cheese sold on October 28, 2023, November 27, 2023, December 27, 2023, and January 17, 2023, neither Rizo-Lopez nor Castle notified Reser's that the cheese was included in the January 11, 2024 recall.

22.    In fact, despite Castle knowing on or around January 11, 2024, that it had sold contaminated cheese on October 28, 2023, November 27, 2023, and December 27, 2023, Castle

**Page 4 - COMPLAINT**

Exhibit 1 Page 4 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

sold Reser's an additional quantity of the same contaminated cheese on January 17, 2024, while failing to alert Reser's of the contamination.

23.   Shortly after the January 11, 2024 recall, whole genome sequencing (WGS) analysis of the cotija cheese by the Center for Disease Control (CDC) showed the sample from Hawaii matched the strain of L. mono. from a December 2023 outbreak, causing the CDC and Food and Drug Administration (FDA) to open an investigation.

24.   As part of the investigation, the FDA conducted an on-site inspection of the Rizo-Lopez facility, and an environmental sample collected during that inspection tested positive for L. mono.

25.   WGS analysis of the sample taken by the FDA showed it was the same strain of L. mono. found not only in the December 2023 outbreak, but also outbreaks in 2014, 2015, 2017, 2018, 2019, 2020, 2021 and 2022.

26.   Based on this WGS analysis, the FDA concluded that contaminated cheese sold by Rizo-Lopez was responsible for the Listeria outbreaks occurring from 2014-2023.

27.   As a result of this finding, Rizo-Lopez expanded its recall on February 5, 2024, to include all sell-by dates of its dairy products.

28.   On February 5, 2024, Reser's was provided with notice that the cheese purchased from Castle was subject to the L. mono. recall. See Exhibit 2.

29.   Rizo-Lopez specifically advised Reser's, "Rizo Lopez Foods is voluntarily recalling all cheese products we have shipped to you because they have the potential to be contaminated with Listeria monocytogenes, an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune

**Page 5 - COMPLAINT**

Exhibit 1 Page 5 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

systems," and instructed Reser's to assist in the recall by notifying Reser's customers. See Exhibit 2.

30.     Rizo-Lopez recognized the recall would create hardship for Reser's, but that the recall was nonetheless necessary: "We fully understand that this recall may cause considerable inconvenience. However, we are taking these actions in the interest of protecting consumers." See Exhibit 2.

31.     As a result of the February 5, 2024 notice from Rizo-Lopez, Reser's contacted its customers to start recalling products which contained cheese purchased from Castle on October 28, 2023, November 27, 2023, December 27, 2023, and January 17, 2023.

32.     The FDA and CDC continued to monitor the outbreak and the Rizo-Lopez recall until April 9, 2024, at which point the CDC officially declared the outbreak was over.

33.     However, the investigation into Rizo-Lopez continued after the outbreak and recall ended, culminating in the U.S. Justice Department filing a civil suit on September 27, 2024, against Rizo-Lopez Foods for violating the Federal Food, Drug and Cosmetic Act (FDCA) in connection with the Listeria outbreak. See Exhibit 3.

34.     The suit was settled on October 9, 2024, when the court entered a consent decree of permanent injunction against Rizo-Lopez, preventing the company from manufacturing and selling any food products until the company complies with FDCA regulations, and then receives FDA approval to resume operations.

35.     As a result of the above-described conduct of Rizo-Lopez and Castle in causing and/or contributing to the L. mono. outbreak, Reser's was forced to implement an extensive product recall pursuant to the notice it received on February 5, 2024.

**Page 6 - COMPLAINT**

Exhibit 1 Page 6 of 51

**SUSSMAN SHANK LLP, ATTORNEYS AT LAW**
**1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089**
**TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130**

36.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal due to said recall.

37.     In addition, the actions of Rizo-Lopez and Castle caused injury to Reser's business reputation.

38.     Reser's was also forced to employ counsel in an attempt to seek reimbursement from Rizo-Lopez and Castle for the damages caused by each, including filing the instant lawsuit.

39.     Reser's damages are the direct result of the negligent, outrageous, willful and reckless actions of Rizo-Lopez and Castle in manufacturing and selling contaminated cheese, as more fully stated below.

### COUNT I - UNLAWFUL TRADE PRACTICE ACT (ORS 646.638): RIZO-LOPEZ

40.     Reser's realleges paragraphs 1-39 above as if fully stated herein.

41.     Rizo-Lopez manufactured and sold cotija cheese.

42.     Reser's purchased cheese that was manufactured and sold by Rizo-Lopez.

43.     In violation of ORS 646.638, Rizo-Lopez willfully mislead consumers/purchasers that its cotija cheese was fit for human consumption.

44.     Specifically, Rizo-Lopez made assurances that its cheese was fit for consumption despite knowing its manufacturing processes did not comply with basic health and safe standards, including:

   a.   Failure to clean and sanitize equipment in a manner that protects against contamination of food and food contact surfaces.

   b.   Failure to provide adequate floor drainage in all areas where floors are subject to flooding-type cleaning.

**Page 7 - COMPLAINT**

Exhibit 1 Page 7 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

    c.   Allowing pools of water to gather near manufacturing equipment, thus creating a breeding ground for bacteria.

    d.   Failure to ensure employees wash their hands after their hands may have become soiled or contaminated.

    e.   Failure to have employees wear gloves or other appropriate protective gear to prevent contamination.

    f.   Failure to test its products to ensure they are free of contaminants.

45.    As a result of Rizo-Lopez's failure to follow health safety guidelines, its cheese products were contaminated with L. mono., rendering them unfit for human consumption.

46.    Rizo-Lopez's actions showed a reckless and outrageous indifference to a highly unreasonable risk of harm and that Rizo-Lopez acted with a conscious indifference to the health, safety and welfare of others.

47.    Moreover, Rizo-Lopez's behavior has been ongoing since at least 2014, when the first Listeria outbreak tied to Rizo-Lopez cheese occurred.

48.    Despite knowing that it did not follow the safety standards necessary to ensure its products were fit for human consumption, Rizo-Lopez nonetheless sold its cotija cheese with the representation that the cheese was fit for consumption.

49.    By willfully concealing its conscious indifference to basic health standards, Rizo-Lopez allowed its cotija cheese to enter the market, where it was ultimately purchased by Reser's and used in Reser's products.

50.    As a direct and proximate result of Rizo-Lopez's willful misrepresentation as to the quality of its cheese, Reser's was forced to recall numerous products contaminated with Rizo-Lopez cheese which Reser's had sold to its customers.

**Page 8 - COMPLAINT**

Exhibit 1 Page 8 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

51.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

52.     Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

53.     Reser's damages related to the recall were the direct and proximate result of Rizo-Lopez's actions in violation of ORS 646.638.

54.     Rizo-Lopez's actions in failing to follow basic health safety guidelines, leading to multiple Listeria outbreaks over a 10-year period, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Rizo-Lopez acted with a conscious indifference to the health, safety and welfare of others.

55.     Rizo-Lopez's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 646.638.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT II – NEGLIGENT MISREPRESENTATION (ORS 30.900): RIZO-LOPEZ

56.     Reser's realleges paragraphs 1-55 above as if fully stated herein.

57.     Rizo-Lopez manufactured and sold cotija cheese.

58.     Reser's purchased cheese that was manufactured and sold by Rizo-Lopez.

59.     Rizo-Lopez held out its cheese products as being fit for human consumption.

**Page 9 - COMPLAINT**

Exhibit 1 Page 9 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

60.     Rizo-Lopez made such assurances that its cheese was fit for consumption despite knowing its manufacturing processes did not comply with basic health and safe standards, including:

  a.   Failure to clean and sanitize equipment in a manner that protects against contamination of food and food contact surfaces.

  b.   Failure to provide adequate floor drainage in all areas where floors are subject to flooding-type cleaning.

  c.   Allowing pools of water to gather near manufacturing equipment, thus creating a breeding ground for bacteria.

  d.   Failure to ensure employees wash their hands after their hands may have become soiled or contaminated.

  e.   Failure to have employees wear gloves or other appropriate protective gear to prevent contamination.

  f.   Failure to test its products to ensure they are free of contaminants.

61.     As a result of Rizo-Lopez's failure to follow health safety guidelines, its cheese products were contaminated with L. mono., rendering them unfit for human consumption.

62.     Despite knowing that it did not follow the safety standards necessary to ensure its products were fit for human consumption, Rizo-Lopez nonetheless sold its cotija cheese with the representation that the cheese was fit for consumption.

63.     As a direct and proximate result of Rizo-Lopez's misrepresentations as to the quality of its cheese, Reser's was forced to recall numerous products contaminated with Rizo-Lopez cheese which Reser's had sold to its customers.

**Page 10 - COMPLAINT**

Exhibit 1 Page 10 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

64.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

65.     Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

66.     Rizo-Lopez's actions in failing to follow basic health safety guidelines, leading to multiple Listeria outbreaks over a 10-year period, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Rizo-Lopez acted with a conscious indifference to the health, safety and welfare of others.

67.     Rizo-Lopez's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT III – NEGLIGENCE (ORS 30.900): RIZO-LOPEZ

68.     Reser's realleges paragraphs 1-67 above as if fully stated herein.

69.     Rizo-Lopez was in the business of manufacturing and selling cotija cheese.

70.     Rizo-Lopez therefore had a duty to sell cheese that was fit for human consumption.

71.     Rizo Lopez was negligent in manufacturing its cheese product as its manufacturing processes did not comply with basic health and safe standards, including:

a.   Failure to clean and sanitize equipment in a manner that protects against contamination of food and food contact surfaces.

**Page 11 - COMPLAINT**

Exhibit 1 Page 11 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

b.  Failure to provide adequate floor drainage in all areas where floors are subject to flooding-type cleaning.

c.  Allowing pools of water to gather near manufacturing equipment, thus creating a breeding ground for bacteria.

d.  Failure to ensure employees wash their hands after their hands may have become soiled or contaminated.

e.  Failure to have employees wear gloves or other appropriate protective gear to prevent contamination.

f.  Failure to test its products to ensure they are free of contaminants.

72.    Rizo-Lopez's negligence led to its products being contaminated with L. mono.

73.    Rizo-Lopez then sold its contaminated cheese without testing the finished product for contaminants, ensuring the tainted product would arrive in the hands of purchasers such as Reser's.

74.    Rizo-Lopez's negligence in selling contaminated cheese violated its duty to sell products which were fit for human consumption.

75.    As a direct result of Rizo-Lopez's negligence, tainted cheese made its way into Reser's products, and Reser's was forced to initiate a recall.

76.    Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

77.    Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

78.    Rizo-Lopez's actions in failing to follow basic health safety guidelines, leading to multiple Listeria outbreaks over a 10-year period, show a reckless and outrageous indifference to

**Page 12 - COMPLAINT**

Exhibit 1 Page 12 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

a highly unreasonable risk of harm and that Rizo-Lopez acted with a conscious indifference to the health, safety and welfare of others.

79.     Rizo-Lopez's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT IV – STRICT LIABILITY (ORS 30.920): RIZO-LOPEZ

80.     Reser's realleges paragraphs 1-79 above as if fully stated herein.

81.     Rizo-Lopez was in the business of manufacturing and selling cotija cheese.

82.     The cotija cheese sold by Rizo-Lopez was defective in that it was contaminated with L. mono.

83.     The contaminated cheese sold by Rizo-Lopez was purchased by Reser's and used in its food products.

84.     The contamination in the Rizo-Lopez cheese created an unreasonably dangerous condition which led to several L. mono. outbreaks.

85.     As Rizo-Lopez sold a defective, unreasonably dangerous product which reached users of the product, and as Rizo-Lopez was in the business of selling such product, Rizo-Lopez is strictly liable for the damages caused thereby pursuant to ORS 30.920.

86.     As a direct and proximate result of Rizo-Lopez's sale of a defective product, Reser's was forced to recall numerous products it had sold to its customers.

**Page 13 - COMPLAINT**

Exhibit 1 Page 13 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

87.    Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

88.    Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

89.    Rizo-Lopez's actions in failing to follow basic health safety guidelines, leading to multiple Listeria outbreaks over a 10-year period, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Rizo-Lopez acted with a conscious indifference to the health, safety and welfare of others.

90.    Rizo-Lopez's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor for $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney fees and costs, and such other relief as this court deems and just and proper.

## COUNT V - UNLAWFUL TRADE PRACTICE ACT (ORS 646.638): CASTLE

91.    Reser's realleges paragraphs 1-90 above as if fully stated herein.

92.    Castle purchased cotija cheese from Rizo-Lopez.

93.    After applying its own additional manufacturing techniques to the Rizo-Lopez cheese, Castle sold the cheese to Reser's.

94.    In violation of ORS 646.638, Castle willfully mislead Reser's that its cotija cheese was fit for human consumption.

95.    Specifically, Castle made assurances that its cheese was fit for consumption despite knowing it did not comply with basic health and safe standards, including:

**Page 14 - COMPLAINT**

Exhibit 1 Page 14 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

    a.   Failure to require suppliers, such as Rizo-Lopez, to provide proof that their products were tested for, and free of, contaminants.

    b.   Failure to test ingredients, such as cheese, which were purchased from other manufacturers to ensure the ingredients were not contaminated before being used in Castle's products.

    c.   Failure to test its own products to ensure they are free of contaminants before selling them to purchasers such as Reser's.

    d.   Failure to alert Reser's of contaminations after Castle was informed of the issue.

96.    As a result of Castle's failure to follow health safety guidelines, its cheese products were contaminated with L. mono., rendering them unfit for human consumption.

97.    Castle's actions showed a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle has acted with a conscious indifference to the health, safety and welfare of others.

98.    Despite knowing that it did not follow the safety standards necessary to ensure its products were fit for human consumption, Castle nonetheless sold its cotija cheese to Reser's with the representation that the cheese was fit for consumption.

99.    In fact, despite Castle knowing on or around January 11, 2024, that it had purchased contaminated cheese and sold it Reser's, Castle sold Reser's an additional quantity of the same contaminated cheese on January 17, 2024, and February 5, 2024, while failing to alert Reser's of the contamination.

100.    As a direct and proximate result of Castle's willful misrepresentation as to the quality of its products, Reser's purchased cotija cheese from Castle and used the same in its products.

**Page 15 - COMPLAINT**

Exhibit 1 Page 15 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

101.   As a direct and proximate result of Castle's willful misrepresentation as to the quality of its products, Reser's was forced to recall numerous products contaminated with Castle's cheese which Reser's had sold to its customers.

102.   Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

103.   Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

104.   Reser's damages related to the recall were the direct and proximate result of Castle's actions in violation of ORS 646.638.

105.   Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

106.   Castle's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 646.638.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT VI – NEGLIGENT MISREPRESENTATION (ORS 30.900): CASTLE

107.   Reser's realleges paragraphs 1-106 above as if fully stated herein.

108.   Castle purchased cotija cheese from Rizo-Lopez.

**Page 16 - COMPLAINT**

Exhibit 1 Page 16 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

109.    After applying its own manufacturing techniques to the Rizo-Lopez cheese, Castle sold the cheese to Reser's.

110.    Castle held out its cheese products as being fit for human consumption.

111.    Castle made such assurances that its cheese was fit for consumption despite knowing its manufacturing processes did not comply with basic health and safe standards, including:

   a.   Failure to require suppliers, such as Rizo-Lopez, to provide proof that their products were tested for, and free of, contaminants.

   b.   Failure to test ingredients, such as cheese, which were purchased from other manufacturers to ensure the ingredients were not contaminated before being used in Castle's products.

   c.   Failure to test its own products to ensure they are free of contaminants before selling them to purchasers such as Reser's.

   d.   Failure to alert Reser's of contaminations after Castle was informed of the issue.

112.    As a result of Castle's failure to follow health safety guidelines, its cheese products were contaminated with L. mono., rendering them unfit for human consumption.

113.    Despite knowing that it did not follow the safety standards necessary to ensure its products were fit for human consumption, Castle nonetheless sold its cotija cheese to Reser's with the representation that the cheese was fit for consumption.

114.    In fact, despite Castle knowing on or around January 11, 2024, that it had purchased contaminated cheese and sold it to Reser's, Castle sold Reser's an additional quantity of the same contaminated cheese on January 17, 2024, and February 5, 2024, while failing to alert Reser's of the contamination.

**Page 17 - COMPLAINT**

Exhibit 1 Page 17 of 51    20

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

115.    As a direct and proximate result of Castle's misrepresentations as to the quality of its products, Reser's purchased cotija cheese from Castle and used the same in its products.

116.    As a direct and proximate result of Castle's willful misrepresentation as to the quality of its products, Reser's was forced to recall numerous products contaminated with Castle's cheese which Reser's had sold to its customers.

117.    Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

118.    Reser's also suffered substantial business interruption, unquantified damage to its business reputation, and incurred attorney's fees as a result of the recall.

119.    Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

120.    Castle's behavior, therefore, entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT VII – NEGLIGENCE (ORS 30.900): CASTLE

121.    Reser's realleges paragraphs 1-120 above as if fully stated herein.

122.    Castle was in the business of manufacturing and selling cotija cheese.

123.    Castle sold cotija cheese to Reser's for use in food products.

**Page 18 - COMPLAINT**

Exhibit 1 Page 18 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

124.    Castle had a duty to ensure the cheese it sold to Reser's was fit for human consumption.

125.    Castle was negligent in that its manufacturing processes did not comply with basic health and safe standards, including:

    a.    Failure to require suppliers, such as Rizo-Lopez, to provide proof that their products were tested for, and free of, contaminants.

    b.    Failure to test ingredients, such as cheese, which were purchased from other manufacturers to ensure the ingredients were not contaminated before being used in Castle's products.

    c.    Failure to test its own products to ensure they are free of contaminants before selling them to purchasers such as Reser's.

    d.    Failure to alert Reser's of contaminations after Castle was informed of the issue.

126.    Castle's negligence led to its cheese being contaminated with L. mono. and unfit for human consumption.

127.    The cheese which Castle sold to Reser's was contaminated with L. mono. and was therefore unfit for human consumption.

128.    Castle's negligence in selling cheese which was unfit for human consumption was a violation of the duty it owed to Reser's.

129.    Castle further violated its duty by selling Reser's an additional quantity of contaminated cheese on January 17, 2024, and February 5, 2024, despite Castle receiving notice on or around January 11, 2024, that the cheese was contaminated.

130.    As a direct result of Castle's negligence, tainted cheese made its way into Reser's products, and Reser's was forced to initiate a recall.

**Page 19 - COMPLAINT**

Exhibit 1 Page 19 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

131.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

132.     Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

133.     Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

134.     Castle's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney's fees and costs, and such other and further relief as this court deems and just and proper.

### COUNT VIII – STRICT LIABILITY (ORS 30.920): CASTLE

135.     Reser's realleges paragraphs 1-134 above as if fully stated herein.

136.     Castle was in the business of manufacturing and selling cotija cheese.

137.     The cotija cheese sold to Reser's by Castle was defective in that it was contaminated with L. mono.

138.     Castle was aware of the contamination on or around January 11, 2024, but sold an additional quantity of contaminated cheese to Reser's on January 17, 2024, and February 5, 2024

139.     The contamination in the Castle cheese created an unreasonably dangerous condition which led to a nationwide L. mono. outbreak.

**Page 20 - COMPLAINT**

Exhibit 1 Page 20 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

140. As Castle sold a defective, unreasonably dangerous product to Reser's, and as Castle was in the business of selling such product, Castle is strictly liable for the damages caused by such sale pursuant to ORS 30.920.

141. As a direct and proximate result of Castle's sale of this defective product, Reser's was forced to recall numerous products it had sold to its customers.

142. Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

143. Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

144. Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

145. Castle's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor for $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney fees and costs, and such other relief as this court deems and just and proper.

### COUNT IX – BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE (ORS 72.3150): CASTLE

146. Reser's realleges paragraphs 1-145 above as if fully stated herein.

147. Castle was a seller of cotija cheese.

**Page 21 - COMPLAINT**

Exhibit 1 Page 21 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

148.    Reser's is a producer of food products which use cotija cheese as an ingredient.

149.    Reser's purchased cotija cheese from Castle.

150.    At the time of purchase, Castle knew or had reason to know that Reser's intended to use the purchased cheese as a food ingredient.

151.    At the time of purchase, Castle knew or had reason to know that Reser's was relying on Castle's skill and judgment to furnish cheese which was suitable for consumption as a food product.

152.    At the time of purchase, Castle knew or had reason to know that its cheese was contaminated.

153.    Despite this knowledge, Castle sold Reser's contaminated cheese which was not fit for human consumption.

154.    Castle thereby breached its implied warranty that the cheese it sold to Reser's was fit for the purpose for which it was intended, i.e. as a consumable food item.

155.    As a direct and proximate result of Castle's breach of its implied warranty of fitness, Reser's was forced to recall numerous products it had sold to its customers which contained cheese that was not fit for human consumption.

156.    Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

157.    Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

158.    Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable

**Page 22 - COMPLAINT**

Exhibit 1 Page 22 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

159.     Castle's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor for $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney fees and costs, and such other relief as this court deems and just and proper.

## COUNT X – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ORS 72.3140): CASTLE

160.     Reser's realleges paragraphs 1-159 above as if fully stated herein.

161.     Castle was a merchant of cotija cheese.

162.     Reser's entered into purchase order agreements with Castle for the sale of cotija cheese to Reser's for use in Reser's food products

163.     As Castle was a merchant of cotija cheese, there was an implied warranty of merchantability for the cotija cheese which Castle sold to Reser's.

164.     Castle breached this implied warranty as the cotija cheese it sold was contaminated with L. mono and therefore was not merchantable.

165.     As a direct and proximate result of Castle's breach of its implied warranty or merchantability, Reser's was forced to recall numerous products it had sold to its customers which contained cheese that was not fit for human consumption.

166.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal.

**Page 23 - COMPLAINT**

Exhibit 1 Page 23 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

167.    Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

168.    Castle's actions in failing to follow basic health safety guidelines, contributing to a nationwide Listeria outbreak, show a reckless and outrageous indifference to a highly unreasonable risk of harm and that Castle acted with a conscious indifference to the health, safety and welfare of others.

169.    Castle's behavior therefore entitles Reser's to an award of punitive damages pursuant to ORS 31.730.

WHEREFORE, Reser's hereby prays this court for judgment in its favor for $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, punitive damages, attorney fees and costs, and such other relief as this court deems and just and proper.

## COUNT XI – BREACH OF CONTRACT: CASTLE

170.    Reser's realleges paragraphs 1-169 above as if fully stated herein.

171.    Castle was in the business of manufacturing and selling cotija cheese.

172.    Reser's entered into purchase order agreements with Castle for the sale of cotija cheese to Reser's for use in Reser's food products.

173.    The cheese Castle sold to Reser's was not fit for use in Reser's food products as it was not fit for human consumption due to contamination with L. mono.

174.    As Castle failed to provide cheese, which was fit for human consumption, Castle breached its purchase order agreements with Reser's.

175.    As a direct result of Castle's breach of the purchase order agreements, tainted cheese made its way into Reser's products, and Reser's was forced to initiate a recall.

**Page 24 - COMPLAINT**

Exhibit 1 Page 24 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

176.     Reser's has sustained $3,698,008.54 in damages to date related to product reimbursement and product disposal due to Castle's breach.

177.     Reser's also suffered substantial business interruption, unquantified damage to its business reputation and incurred attorney's fees as a result of the recall.

WHEREFORE, Reser's hereby prays this court for judgment in its favor in the amount of $3,698,008.54 plus any continuing damages related to the recall, plus damages for the injury to its business reputation, and such other and further relief as this court deems and just and proper.

Dated this 22nd day of November, 2024.


SUSSMAN SHANK LLP


By s/ Timothy J. Coleman
        Timothy J. Coleman, OSB No. 841970
        (503) 227-1111
        Attorneys for Plaintiff


**Page 25 - COMPLAINT**

Exhibit 1 Page 25 of 51

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Rizo Lopez Foods, Inc. Recalls Aged Cotija Mexican Grating Cheese (8oz) Because of Possible Health Risk | FDA

**COMPANY ANNOUNCEMENT**

# Rizo Lopez Foods, Inc. Recalls Aged Cotija Mexican Grating Cheese (8oz) Because of Possible Health Risk

When a company announces a recall, market withdrawal, or safety alert, the FDA posts the company's announcement as a public service. FDA does not endorse either the product or the company.

Read Announcement    View Product Photos

## Summary

**Company Announcement Date:**

January 11, 2024

**FDA Publish Date:**

January 11, 2024

**Product Type:**

Food & Beverages
Dairy

**Reason for Announcement:**

Potential Listeria monocytogenes contamination.

**Company Name:**

Rizo Lopez Foods, Inc.

**Brand Name:**

Rizo Bros California Creamery

**Product Description:**

Aged Cojita Mexican Grating Cheese

## Company Announcement

Rizo Lopez Foods, Inc. of Modesto, CA is recalling a total of 344 cases of Aged Cotija Mexican Grating Cheese (8oz), UPC 72724200043 batch number 4DW-23318 because it has the potential to be contaminated with *Listeria monocytogenes*, an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with

Exhibit 1 Page 26 of 51          29          Exhibit 1
Page 1 of 4

weakened immune systems. Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, Listeria infection can cause miscarriage and stillbirths among pregnant women.

Aged Cotija Mexican Grating Cheese (8oz) was distributed nationwide through distributors.

The product comes in a small 8oz. "puck" shape wrapped in clear plastic marked with red and black lettering on the botom noted as "Cotija, made with Grade A Milk" along with an ingredient description. Nutritional facts are noted in black below the ingredient description. The top shows "Cotija Aged Mexican Grating Cheese" with orange background. Batch number is identified on the outer edge of the clear plastic with "SELL BY 05/12/24 BATCH 4DW-23318" in black lettering.

To date, no confirmed illnesses related to this product have been reported.

The recall was a result of a routine sampling program by the Hawaii State Department of Health's Food and Drug Branch on Wednesday, January 3rd which revealed that the finished product contained the bacteria. Rizo Lopez Foods, Inc. has ceased the produc on and distribution of the product as the FDA and Rizo Lopez Foods continue their investigation as to what caused the issue.

Consumers who have purchased Aged Cotija Mexican Grating Cheese (8oz). are urged to quarantine the product and destroy it. Consumers with questions may contact the company at 1-800-626-5587, Monday through Friday, 8:00am-5:00pm Pacific Standard Time.

Link to Expanded Recall Announcement (/safety/recalls-market-withdrawals-safety-alerts/rizo-lopez-foods-inc-voluntarily-recalls-dairy-products-because-possible-health-risk)

Link to FDA Outbreak Investigation (/food/outbreaks-foodborne-illness/outbreak-investigation-listeria-monocytogenes-queso-fresco-and-cotija-cheese-february-2024)

# Company Contact Information

**Consumers:**

Rizo Lopez Foods, Inc.

📞 1-800-626-5587

# Product Photos







Filed 01/23/26    Case 3:24-cv-01863-SB    Document 35-1 500 Filed 11/22/24    Page 29 of 51    Doc 377

Rizo Lopez Foods, Inc. Recalls Aged Cotija Mexican Grating Cheese (8oz.) Because of Possible Health Risk | FDA







201 S. McClure Rd.
Modesto, CA 95357-0519

Phone: 209-232-3700
Fax: 209-232-3789

tiofranciscocheese.com

⊙ More Recalls, Market
Withdrawals, &
Safety Alerts (/safety/recalls-market-withdrawals-safety-alerts)

BRIAN B. BOYNTON
Principal Deputy Assistant Attorney General
BURDEN H. WALKER
Acting Deputy Assistant Attorney General
AMANDA N. LISKAMM
Director
DAVID G. CROCKETT, JR.
Senior Trial Attorney
JAMES T. NELSON
Senior Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: 202-305-0192
Facsimile: 202-514-8742

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. _____ |
| Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION** |
| v. | |
| RIZO LOPEZ FOODS, INC., A CORPORATION, AND EDWIN RIZO AND TOMAS RIZO, | |
| Defendants. | |

Plaintiff, the United States of America, by its undersigned counsel, on behalf of the United States Food and Drug Administration ("FDA"), respectfully represents to this Court as follows:

1.      This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), and the inherent equitable authority of this Court, to enjoin and restrain Rizo Lopez Foods, Inc., a corporation, and Edwin Rizo and Tomas Rizo, individuals (collectively, "Defendants"), from violating: 21 U.S.C. § 331(a), by introducing or delivering for

Exhibit 1 Page 30 of 51                    33                    **Exhibit 2**
                                                              **Page 1 of 11**

introduction into interstate commerce, or causing to be introduced or delivered for introduction into interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f) that are adulterated within the meaning of 21 U.S.C. § 342(a)(4); and (b) 21 U.S.C. § 331(k), by causing articles of food within the meaning of 21 U.S.C. § 321(f) that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(a)(4).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter and all parties to this action under 21 U.S.C. § 332(a), 28 U.S.C. §§ 1331, 1337, and 1345.

3.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## DEFENDANTS

4.    Defendant Rizo Lopez, Inc. ("Rizo Lopez") is a California corporation. The company manufactures, receives, prepares, processes, packs, holds, and/or distributes refrigerated, ready-to-eat ("RTE") food, including, but not limited to, cheese, yogurt, and sour cream products. These products are manufactured at Rizo Lopez's facility located at 201 South McClure Road, Modesto, California 95357 (the "Facility"), within the jurisdiction of this Court.

5.    Defendant Edwin Rizo is the Chief Executive Officer, co-owner, and President of Rizo Lopez. Along with Tomas Rizo, Edwin Rizo is the most responsible person at Rizo Lopez. Defendant Edwin Rizo oversees the company's overall operations, including manufacturing, receiving, preparing, processing, packing, holding, and distributing food, and shares responsibility in detecting, preventing, and correcting violative conditions at the Facility. He performs his duties at the Facility, within the jurisdiction of this Court.

6.    Defendant Tomas Rizo is the Chief Financial Officer, co-owner, and Secretary of Rizo Lopez. Defendant Tomas Rizo is responsible for the company's distribution and promotion of Rizo Lopez products, and he shares responsibility with Edwin Rizo in detecting, preventing, and correcting violative conditions at the Facility. He performs his duties at the Facility, within the jurisdiction of this Court.

7.    Defendants receive one or more components used to manufacture their RTE dairy

Exhibit 1 Page 31 of 51                          34                          Exhibit 2
Page 2 of 11

products from outside of California. For instance, Defendants received two shipments of rennet from Wisconsin, which they used to manufacture Cotija and Fresco cheese products.

8.      Defendants manufacture and distribute dairy products throughout the United States sold under various brand names, including, but not limited to, Tio Francisco, Don Francisco, Rizo Bros, and 365 Whole Foods Market. Defendants also distribute dairy products in bulk as a contract manufacturer to multiple companies, including, but not limited to, Walmart, Inc., Sysco Corporation, and United Natural Foods, Inc., that independently distribute those dairy products throughout the United States.

## **FOOD SAFETY**

9.      *Listeria monocytogenes* ("*L. mono*") is a major pathogen, and one of several bacteria contained within the *Listeria* species ("*Listeria spp.*"). *L. mono* can cause the disease listeriosis, a disease commonly contracted by consuming food contaminated with the bacterium. Listeriosis can be serious, even fatal, for vulnerable groups such as the elderly, newborns, and those with impaired immune systems. Complications from the disease can include pneumonia, central nervous system damage, endocarditis, localized abscesses, skin lesions, and conjunctivitis. Pregnant women may contract flu-like symptoms from listeriosis, and complications from the disease can result in miscarriages, stillbirth, and meningitis.

10.     *L. mono* can survive and grow even when precautions are taken, such as maintaining food at refrigeration temperatures. *L. mono* can also colonize on moist surfaces such as floors, floor drains, wet areas, and processing equipment, and is often found in condensation or standing water, floors, food residues, processing equipment, and other niches in facilities.

11.     The presence of *L. mono* in a facility where RTE dairy products are exposed to the processing environment allows for contamination of RTE dairy products and presents a serious danger to public health. To minimize the potential for *L. mono* contamination, it is necessary to have sanitation procedures that prevent contamination of food contact surfaces and eliminate niches where *L. mono* can become established, grow, and persist.

Exhibit 1 Page 32 of 51                                35                                **Exhibit 2**
**Page 3 of 11**

### DEFENDANTS' VIOLATIONS

12.    Defendants' food (*e.g.*, cheese, yogurt, and sour cream products) is food within the meaning of the Act, 21 U.S.C. § 321(f).

13.    Defendants' food is adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth or may have been rendered injurious to health. Such insanitary conditions include the presence of *L. mono* at Defendants' Facility.

14.    To prevent insanitary conditions, food manufacturers must adhere to FDA's Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventive Controls ("CGMP") regulations (21 C.F.R. Part 117), which establish basic practices and conditions for food manufacturing operations. Food may be deemed adulterated within the meaning of 21 U.S.C. § 342(a)(4) if it is prepared, packed, or held in a facility that does not comply with these regulations. 21 C.F.R. § 117.1(a)(1).

15.    Defendants violate the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing to be introduced or delivered for introduction into interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f), that are adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that they have been prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health. The insanitary conditions include, but are not limited to, the persistent presence of *L. mono* at Defendants' Facility and Defendants' failure to comply with the CGMP regulations.

16.    Defendants violate the Act, 21 U.S.C. § 331(k) by causing articles of food, within the meaning of 21 U.S.C. § 321(f) that Defendants hold for sale after shipment of one or more of their components into interstate commerce, to become adulterated under 21 U.S.C. § 342(a)(4), in that they have been prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health. The insanitary conditions include, but are not limited to, the persistent presence of *L. mono* at Defendants' Facility and Defendants' failure to comply with the CGMP regulations.

17.    FDA and other state and federal government agencies have found *L. mono* in Defendants' food and/or Facility in January and February 2024. FDA has determined that the same strain of *L. mono*

Exhibit 1 Page 33 of 51                    36                    **Exhibit 2**
                                                                    **Page 4 of 11**

has likely persisted in Defendants' Facility since 2014. FDA has also determined, based on recent inspectional findings, that Defendants are operating their food manufacturing facility under insanitary conditions and failing to follow the food CGMP regulations in 21 C.F.R. Part 117.

### *L. mono* Detected in Defendants' Food in January 2024

18. On or about January 3, 2024, the Hawaii State Department of Health collected a retail product sample of Defendants' Rizo Bros California Creamery brand Aged Cotija Mexican Grating Cheese (Defendants' "retail product sample"). On or about January 5, 2024, a Hawaii State Department of Health laboratory detected *L. mono* in the retail product sample.

19. Rizo Lopez recalled 344 cases of their Rizo Bros California Creamery brand Aged Cotija Mexican Grating Cheese on January 11, 2024.

### CDC Listeriosis Investigation

20. On or about January 18, 2024, Center for Disease Control ("CDC") reopened its multistate, multi-year listeriosis investigation linked to Fresco, Cotija, and other similar cheeses. As part of this investigation, CDC first identified an individual sickened with listeriosis after consuming Defendants' Don Francisco Cotija cheese in 2014.

21. Since 2014, the CDC listeriosis investigation identified twenty-six individuals that had contracted listeriosis and collected twenty-six clinical *L. mono* isolates. Sixteen of these individuals reported consuming Fresco or other similar types of cheeses in the month prior to their illness, and three of them specifically reported consuming Defendants' Don Francisco brand Fresco or Cotija cheese products.

22. The CDC listeriosis investigation identified 26 cases from eleven states: Arizona (4), California (8), Colorado (4), Florida (1), Georgia (1), North Carolina (1), Nevada (1), Oregon (1), Tennessee (2), Texas (2), and Washington (1). Of these cases, four individuals were pregnant, including one who suffered a fetal loss, and twenty-three individuals were hospitalized because of listeriosis, including two individuals who subsequently died.

### FDA's February 2024 Inspection of Defendants' Facility

23. FDA inspected Defendants' Facility between January 24 and February 23, 2024 (the "February 2024 inspection"). During this inspection, FDA collected two environmental subsamples that

Exhibit 1 Page 34 of 51                    37                    Exhibit 2
Page 5 of 11

tested positive for *L.* mono from Defendants' Facility: one from the inside of a tote that Defendants used to store exposed RTE Cotija cheese products, including the retail product sample that tested positive for *L. mono* on January 5, 2024; and the other from the bottom right corner of the Facility's cheese aging room door. Two *L. mono* isolates were derived from each of the *L. mono* positive subsamples.

24.    During the February 2024 inspection, FDA investigators also observed insanitary conditions and documented violations including, but not limited to, Defendants':

a.    Failure to clean and sanitize equipment in a manner that protects against contamination of food and food contact surfaces, as required by 21 C.F.R. § 117.35(a). For example, FDA investigators observed an employee spraying water onto the floor using a high-pressure nozzle adjacent to the machine used for vacuum packaging RTE cheese. The overspray of water aerosolized onto the conveyor belt—a food contact surface on which employees placed exposed RTE cheese wheels. Defendants' use of a high-pressure water hose in a food processing area can contribute to the spread of pathogens and can generate overspray, aerosols, and mist that can transfer pathogens, soil, debris, and filth onto previously cleaned surfaces;

b.    Failure to provide adequate floor drainage in all areas where floors are subject to flooding-type cleaning, as required by 21 C.F.R § 117.37(b)(4). For example, FDA investigators observed employees conducting flood-type cleaning while manufacturing exposed RTE cheese products. Pooled water accumulated throughout the Facility's cheese production room due to inadequate floor drainage. Pooled water is a suitable environment for *L. mono* and can lead to cross-contamination of food in the processing environment; and

c.    Failure to ensure employees wash their hands after their hands may have become soiled or contaminated, as required by 21 C.F.R. § 117.10(b). For example, FDA investigators observed an employee picking up debris from the flooded wet floor of the cheese production room and proceeding to hand pack Cotija cheese without sanitizing their hands.

25.    At the close of the February 2024 inspection, an FDA investigator issued a Form FDA-483 List of Inspectional Observations to Defendants Edwin Rizo and Tomas Rizo, listing the above-described CGMP violations and discussed the violations with them.

Exhibit 1 Page 35 of 51                    38                    Exhibit 2
Page 6 of 11

**WGS Analysis**

26.     FDA used Whole Genome Sequencing ("WGS") to compare (a) the positive *L. mono* isolate identified in Defendants' retail product sample, (b) the twenty-six clinical *L. mono* isolates collected as part of the CDC listeriosis investigation, and (c) the four *L. mono* isolates derived from the two environmental subsamples collected during FDA's February 2024 inspection of Defendants' Facility.

27.     WGS is performed on each bacterial isolate to determine the genomic sequence of its DNA, allowing for high resolution comparisons between isolates and a determination as to whether two isolates originated from the same source.

28.     Using a public database maintained by the National Center for Biotechnology Information, the WGS data is compared against the WGS data of isolates that have been collected from previous food and clinical surveillance efforts to determine whether two or more isolates originated from the same source.

29.     Based on its analysis of the WGS data, FDA identified a genetic match among (a) the positive *L. mono* isolate identified in Defendants' retail product sample, (b) the twenty-six clinical *L. mono* isolates collected as part of the CDC listeriosis investigation, and (c) the four *L. mono* isolates derived from the two environmental subsamples FDA collected from Defendants' Facility. This match indicates that this *L. mono* strain likely originated from the same source, Defendants' Facility.

30.     When a pathogen isolate found in a food manufacturing facility matches a pathogen isolate from an ill patient, the match implies that the pathogen strain in the facility is capable of causing illness. Accordingly, because the isolates collected from Defendants' Facility matched the isolates from the CDC's listeriosis investigation, FDA has determined that the strain of *L. mono* in Defendants' Facility is capable of causing illness.

31.     Because the isolate from the Defendants' retail product sample collected by Hawaii in 2024 and the clinical isolates collected by CDC since 2014 match the strain of *L. mono* found in Defendants' Facility during the February 2024 inspection, this strain of *L. mono* is likely a resident strain that has existed in Defendants' Facility since at least 2014. The presence of a resident strain in a

Exhibit 1 Page 36 of 51                    39                    **Exhibit 2**
                                                                      **Page 7 of 11**

facility indicates previous sanitation efforts have been ineffective in eradicating the *L. mono* from the facility.

**Defendants' Responses Are Inadequate**

32.    On or about February 2, 2024, FDA informed Defendants Rizo Lopez and Edwin Rizo that a strain of *L. mono* identified in an environmental subsample collected during the February 2024 inspection matched the strain of *L. mono* in the retail product sample and twenty-five[1] clinical isolates in the CDC listeriosis investigation. After further discussions among Defendants, FDA, and CDC, on or about February 5, 2024, Defendants recalled all RTE dairy products within expiry and temporarily ceased operations.

33.    On February 12, 2024, FDA informed Defendants Rizo Lopez and Edwin Rizo that it detected the same strain of *L. mono* in the second environmental subsample that had been identified in the first environmental subsample, retail product sample, and twenty-five clinical isolates from the CDC listeriosis investigation.

34.    On February 14, 2024, Rizo Lopez's Quality Assurance Manager sent FDA an email stating that the company issued a facility-wide recall "out of an abundance of caution and to support the practical administration of the recall." Defendants further stated, "We did not perform a risk assessment of products made elsewhere in the facility or make a specific determination that the products we supplied to [a buyer] were contaminated. For this reason, it would not be accurate for someone to believe based on the scope of the recall that we made a determination one way or the other that [the buyer's] products were contaminated." Defendants Edwin Rizo and Tomas Rizo were copied on the email.

35.    On March 15, 2024 and April 12, 2024, Defendant Edwin Rizo, on behalf of Rizo Lopez, responded to FDA's List of Inspectional Observations, stating that, among other things, Rizo Lopez was

---

[1] Due to differences in the laboratory sequencing methods used by CDC and FDA, in February 2024 FDA analyzed data for twenty-five of the twenty-six clinical isolates collected by CDC. In May 2024, FDA analyzed the remaining clinical isolate and determined that all twenty-six clinical isolates match the identified strain of *L. mono*.

Exhibit 1 Page 37 of 51                    40                    Exhibit 2
Page 8 of 11

investigating potential contamination sources, revising policies and procedures, and implementing corrective actions.

36.     On or about May 23, 2024, Defendant Edwin Rizo, on behalf of Rizo Lopez, provided a supplemental response to FDA's List of Inspectional Observations stating that, among other things, Rizo Lopez had implemented corrective actions and hired a new Quality Assurance manager. The supplemental response also stated that Rizo Lopez planned, "to restart cheesemaking operations for fresco cheeses as soon as June 3, 2024." The supplemental response did not include sufficient evidence to show that *L. mono* had been eradicated from the Facility.

37.     On or about June 3, 2024, Rizo Lopez resumed food manufacturing operations, even though FDA still did not have sufficient assurance Rizo Lopez's food manufacturing operations were safe and that *L. mono* had been eradicated from the facility.

38.     In an email dated June 13, 2024, Rizo Lopez informed FDA that it "has stopped manufacturing food" and that "[t]he last day of production was . . . June 12, 2024." Rizo Lopez currently receives, holds, and distributes pre-packaged food.

39.     Defendants' responses and corrective actions are inadequate particularly given the ten-year history of a persistent strain of *L. mono* at Defendants' Facility that has resulted in multiple illnesses, including illnesses linked to two deaths and a fetal loss, as well as the recently observed insanitary conditions in Defendants' Facility. Adequate corrective actions would include, among other things, remediating the *L. mono* contamination, verifying through documentation that systematic contamination has been eradicated from the Facility, and establishing and ensuring adequate implementation of sanitation standard procedures for manufacturing food sufficient to identify and prevent contamination in the environment and products in the future. Without such corrective actions, there is a continued risk of *L. mono* contamination of the RTE foods manufactured at Defendants' Facility, posing a serious health risk to consumers.

40.     The United States believes that, unless restrained by order of this Court, Defendants will continue to violate 21 U.S.C. §§ 331(a) and (k).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests this Court to:

Exhibit 1 Page 38 of 51                    41                    **Exhibit 2
Page 9 of 11**

I.      Order that Defendants and each and all of their officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships), cease manufacturing, preparing, processing, packing, and/or distributing food at or from the Facility or at any other current or future location, unless and until Defendants bring their manufacturing, preparing, processing, packing and/or distributing operations for food into compliance with the Act and applicable regulations, to FDA's satisfaction;

II.     Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) from directly or indirectly from violating: (a) 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing to be introduced or delivered for introduction into interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f) that are adulterated within the meaning of 21 U.S.C. § 342(a)(4); and (b) 21 U.S.C. § 331(k), by causing articles of food within the meaning of 21 U.S.C. § 321(f) that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(a)(4);

III.    Order that FDA be authorized to inspect Defendants' place of business and all records relating to the manufacturing, receiving, preparing, processing, packing, and/or distributing articles of food to ensure continuing compliance with the terms of the injunction, the costs of such inspection to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

IV.    Order that Plaintiff be awarded costs incurred in pursuing this action, including the costs of investigation to date, and such other equitable relief as the Court deems just and proper.

1    Dated this __27th__ day of __September__, 2024.

2

3

4                                              BRIAN M. BOYNTON
5                                              Principal Deputy Assistant Attorney
                                               General
6
                                               BURDEN H. WALKER
7                                              Acting Deputy Assistant Attorney General

8                                              AMANDA N. LISKAMM
9                                              Director
                                               Consumer Protection Branch
10
11                                             DAVID CROCKETT

12
                                               Trial Attorney
13                                             Consumer Protection Branch
                                               U.S. Department of Justice, Civil Division
14
15                                             OF COUNSEL:

16                                             SAMUEL R. BAGENSTOS
                                               General Counsel
17                                             United States Department of
                                               Health and Human Services
18
19                                             MARK RAZA
                                               Chief Counsel
20                                             Food and Drug Division

21                                             SHANNON M. SINGLETON
22                                             Deputy Chief Counsel for Litigation

23                                             LAUREN N. FASH
                                               Assistant Chief Counsel for Enforcement
24                                             U.S. Dep't of Health and Human Services
                                               Office of the General Counsel
25
                                               Food and Drug Division
26

27

28

COMPLAINT FOR PERMANENT INJUNCTION              11

Exhibit 1 Page 40 of 51                43                Exhibit 2
                                                                                  Page 11 of 11

1  BRIAN B. BOYNTON
   Principal Deputy Assistant Attorney General
2  BURDEN H. WALKER
   Acting Deputy Assistant Attorney General
3  AMANDA N. LISKAMM
   Director
4  DAVID G. CROCKETT, JR.
   Senior Trial Attorney
5  JAMES T. NELSON
   Senior Trial Attorney
6  U.S. Department of Justice
   Consumer Protection Branch
7  450 Fifth Street, N.W., 6th Floor South
   Washington, D.C. 20001
8  Telephone: 202-305-0192
   Facsimile: 202-514-8742
9

10  Attorneys for Plaintiff
    United States of America
11

12
            IN THE UNITED STATES DISTRICT COURT
13
            EASTERN DISTRICT OF CALIFORNIA
14

15  UNITED STATES OF AMERICA,          | CASE NO. _____

16                    Plaintiff,        | **COMPLAINT FOR PERMANENT**
                                        | **INJUNCTION**
17         v.

18  RIZO LOPEZ FOODS, INC., A
    CORPORATION, AND EDWIN RIZO AND
19  TOMAS RIZO,

20                    Defendants.

21

22         Plaintiff, the United States of America, by its undersigned counsel, on behalf of the United States

23  Food and Drug Administration ("FDA"), respectfully represents to this Court as follows:

24         1.      This statutory injunction proceeding is brought under the Federal Food, Drug, and

25  Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), and the inherent equitable authority of this Court, to

26  enjoin and restrain Rizo Lopez Foods, Inc., a corporation, and Edwin Rizo and Tomas Rizo, individuals

27  (collectively, "Defendants"), from violating: 21 U.S.C. § 331(a), by introducing or delivering for

28

1    introduction into interstate commerce, or causing to be introduced or delivered for introduction into

2    interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f) that are adulterated

3    within the meaning of 21 U.S.C. § 342(a)(4); and (b) 21 U.S.C. § 331(k), by causing articles of food

4    within the meaning of 21 U.S.C. § 321(f) that Defendants hold for sale after shipment of one or more of

5    their components in interstate commerce to become adulterated within the meaning of 21 U.S.C.

6    § 342(a)(4).

7    <u>**JURISDICTION AND VENUE**</u>

8        2.      This Court has jurisdiction over the subject matter and all parties to this action under 21

9    U.S.C. § 332(a), 28 U.S.C. §§ 1331, 1337, and 1345.

10       3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c).

11   <u>**DEFENDANTS**</u>

12       4.      Defendant Rizo Lopez, Inc. ("Rizo Lopez") is a California corporation. The company

13   manufactures, receives, prepares, processes, packs, holds, and/or distributes refrigerated, ready-to-eat

14   ("RTE") food, including, but not limited to, cheese, yogurt, and sour cream products. These products are

15   manufactured at Rizo Lopez's facility located at 201 South McClure Road, Modesto, California 95357

16   (the "Facility"), within the jurisdiction of this Court.

17       5.      Defendant Edwin Rizo is the Chief Executive Officer, co-owner, and President of Rizo

18   Lopez. Along with Tomas Rizo, Edwin Rizo is the most responsible person at Rizo Lopez. Defendant

19   Edwin Rizo oversees the company's overall operations, including manufacturing, receiving, preparing,

20   processing, packing, holding, and distributing food, and shares responsibility in detecting, preventing,

21   and correcting violative conditions at the Facility. He performs his duties at the Facility, within the

22   jurisdiction of this Court.

23       6.      Defendant Tomas Rizo is the Chief Financial Officer, co-owner, and Secretary of Rizo

24   Lopez. Defendant Tomas Rizo is responsible for the company's distribution and promotion of Rizo

25   Lopez products, and he shares responsibility with Edwin Rizo in detecting, preventing, and correcting

26   violative conditions at the Facility. He performs his duties at the Facility, within the jurisdiction of this

27   Court.

28       7.      Defendants receive one or more components used to manufacture their RTE dairy

1  products from outside of California. For instance, Defendants received two shipments of rennet from

2  Wisconsin, which they used to manufacture Cotija and Fresco cheese products.

3          8.      Defendants manufacture and distribute dairy products throughout the United States sold

4  under various brand names, including, but not limited to, Tio Francisco, Don Francisco, Rizo Bros, and

5  365 Whole Foods Market. Defendants also distribute dairy products in bulk as a contract manufacturer

6  to multiple companies, including, but not limited to, Walmart, Inc., Sysco Corporation, and United

7  Natural Foods, Inc., that independently distribute those dairy products throughout the United States.

8  **FOOD SAFETY**

9          9.      *Listeria monocytogenes* ("*L. mono*") is a major pathogen, and one of several bacteria

10  contained within the *Listeria* species ("*Listeria spp.*"). *L. mono* can cause the disease listeriosis, a

11  disease commonly contracted by consuming food contaminated with the bacterium. Listeriosis can be

12  serious, even fatal, for vulnerable groups such as the elderly, newborns, and those with impaired

13  immune systems. Complications from the disease can include pneumonia, central nervous system

14  damage, endocarditis, localized abscesses, skin lesions, and conjunctivitis. Pregnant women may

15  contract flu-like symptoms from listeriosis, and complications from the disease can result in

16  miscarriages, stillbirth, and meningitis.

17        10.     *L. mono* can survive and grow even when precautions are taken, such as maintaining food

18  at refrigeration temperatures. *L. mono* can also colonize on moist surfaces such as floors, floor drains,

19  wet areas, and processing equipment, and is often found in condensation or standing water, floors, food

20  residues, processing equipment, and other niches in facilities.

21        11.     The presence of *L. mono* in a facility where RTE dairy products are exposed to the

22  processing environment allows for contamination of RTE dairy products and presents a serious danger

23  to public health. To minimize the potential for *L. mono* contamination, it is necessary to have sanitation

24  procedures that prevent contamination of food contact surfaces and eliminate niches where *L. mono* can

25  become established, grow, and persist.

26

27

28

## **DEFENDANTS' VIOLATIONS**

12.     Defendants' food (*e.g.*, cheese, yogurt, and sour cream products) is food within the meaning of the Act, 21 U.S.C. § 321(f).

13.     Defendants' food is adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth or may have been rendered injurious to health. Such insanitary conditions include the presence of *L. mono* at Defendants' Facility.

14.     To prevent insanitary conditions, food manufacturers must adhere to FDA's Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventive Controls ("CGMP") regulations (21 C.F.R. Part 117), which establish basic practices and conditions for food manufacturing operations. Food may be deemed adulterated within the meaning of 21 U.S.C. § 342(a)(4) if it is prepared, packed, or held in a facility that does not comply with these regulations. 21 C.F.R. § 117.1(a)(1).

15.     Defendants violate the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing to be introduced or delivered for introduction into interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f), that are adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that they have been prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health. The insanitary conditions include, but are not limited to, the persistent presence of *L. mono* at Defendants' Facility and Defendants' failure to comply with the CGMP regulations.

16.     Defendants violate the Act, 21 U.S.C. § 331(k) by causing articles of food, within the meaning of 21 U.S.C. § 321(f) that Defendants hold for sale after shipment of one or more of their components into interstate commerce, to become adulterated under 21 U.S.C. § 342(a)(4), in that they have been prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health. The insanitary conditions include, but are not limited to, the persistent presence of *L. mono* at Defendants' Facility and Defendants' failure to comply with the CGMP regulations.

17.     FDA and other state and federal government agencies have found *L. mono* in Defendants' food and/or Facility in January and February 2024. FDA has determined that the same strain of *L. mono*

has likely persisted in Defendants' Facility since 2014. FDA has also determined, based on recent inspectional findings, that Defendants are operating their food manufacturing facility under insanitary conditions and failing to follow the food CGMP regulations in 21 C.F.R. Part 117.

### *L. mono* Detected in Defendants' Food in January 2024

18.     On or about January 3, 2024, the Hawaii State Department of Health collected a retail product sample of Defendants' Rizo Bros California Creamery brand Aged Cotija Mexican Grating Cheese (Defendants' "retail product sample"). On or about January 5, 2024, a Hawaii State Department of Health laboratory detected *L. mono* in the retail product sample.

19.     Rizo Lopez recalled 344 cases of their Rizo Bros California Creamery brand Aged Cotija Mexican Grating Cheese on January 11, 2024.

### CDC Listeriosis Investigation

20.     On or about January 18, 2024, Center for Disease Control ("CDC") reopened its multistate, multi-year listeriosis investigation linked to Fresco, Cotija, and other similar cheeses. As part of this investigation, CDC first identified an individual sickened with listeriosis after consuming Defendants' Don Francisco Cotija cheese in 2014.

21.     Since 2014, the CDC listeriosis investigation identified twenty-six individuals that had contracted listeriosis and collected twenty-six clinical *L. mono* isolates. Sixteen of these individuals reported consuming Fresco or other similar types of cheeses in the month prior to their illness, and three of them specifically reported consuming Defendants' Don Francisco brand Fresco or Cotija cheese products.

22.     The CDC listeriosis investigation identified 26 cases from eleven states: Arizona (4), California (8), Colorado (4), Florida (1), Georgia (1), North Carolina (1), Nevada (1), Oregon (1), Tennessee (2), Texas (2), and Washington (1). Of these cases, four individuals were pregnant, including one who suffered a fetal loss, and twenty-three individuals were hospitalized because of listeriosis, including two individuals who subsequently died.

### FDA's February 2024 Inspection of Defendants' Facility

23.     FDA inspected Defendants' Facility between January 24 and February 23, 2024 (the "February 2024 inspection"). During this inspection, FDA collected two environmental subsamples that

1   tested positive for *L. mono* from Defendants' Facility: one from the inside of a tote that Defendants used

2   to store exposed RTE Cotija cheese products, including the retail product sample that tested positive for

3   *L. mono* on January 5, 2024; and the other from the bottom right corner of the Facility's cheese aging

4   room door. Two *L. mono* isolates were derived from each of the *L. mono* positive subsamples.

5        24.    During the February 2024 inspection, FDA investigators also observed insanitary

6   conditions and documented violations including, but not limited to, Defendants':

7             a.    Failure to clean and sanitize equipment in a manner that protects against

8   contamination of food and food contact surfaces, as required by 21 C.F.R. § 117.35(a). For example,

9   FDA investigators observed an employee spraying water onto the floor using a high-pressure nozzle

10  adjacent to the machine used for vacuum packaging RTE cheese. The overspray of water aerosolized

11  onto the conveyor belt—a food contact surface on which employees placed exposed RTE cheese wheels.

12  Defendants' use of a high-pressure water hose in a food processing area can contribute to the spread of

13  pathogens and can generate overspray, aerosols, and mist that can transfer pathogens, soil, debris, and

14  filth onto previously cleaned surfaces;

15            b.    Failure to provide adequate floor drainage in all areas where floors are subject to

16  flooding-type cleaning, as required by 21 C.F.R § 117.37(b)(4). For example, FDA investigators

17  observed employees conducting flood-type cleaning while manufacturing exposed RTE cheese products.

18  Pooled water accumulated throughout the Facility's cheese production room due to inadequate floor

19  drainage. Pooled water is a suitable environment for *L. mono* and can lead to cross-contamination of

20  food in the processing environment; and

21            c.    Failure to ensure employees wash their hands after their hands may have become

22  soiled or contaminated, as required by 21 C.F.R. § 117.10(b). For example, FDA investigators observed

23  an employee picking up debris from the flooded wet floor of the cheese production room and proceeding

24  to hand pack Cotija cheese without sanitizing their hands.

25        25.    At the close of the February 2024 inspection, an FDA investigator issued a Form FDA-

26  483 List of Inspectional Observations to Defendants Edwin Rizo and Tomas Rizo, listing the above-

27  described CGMP violations and discussed the violations with them.

28

**WGS Analysis**

26.    FDA used Whole Genome Sequencing ("WGS") to compare (a) the positive *L. mono* isolate identified in Defendants' retail product sample, (b) the twenty-six clinical *L. mono* isolates collected as part of the CDC listeriosis investigation, and (c) the four *L. mono* isolates derived from the two environmental subsamples collected during FDA's February 2024 inspection of Defendants' Facility.

27.    WGS is performed on each bacterial isolate to determine the genomic sequence of its DNA, allowing for high resolution comparisons between isolates and a determination as to whether two isolates originated from the same source.

28.    Using a public database maintained by the National Center for Biotechnology Information, the WGS data is compared against the WGS data of isolates that have been collected from previous food and clinical surveillance efforts to determine whether two or more isolates originated from the same source.

29.    Based on its analysis of the WGS data, FDA identified a genetic match among (a) the positive *L. mono* isolate identified in Defendants' retail product sample, (b) the twenty-six clinical *L. mono* isolates collected as part of the CDC listeriosis investigation, and (c) the four *L. mono* isolates derived from the two environmental subsamples FDA collected from Defendants' Facility. This match indicates that this *L. mono* strain likely originated from the same source, Defendants' Facility.

30.    When a pathogen isolate found in a food manufacturing facility matches a pathogen isolate from an ill patient, the match implies that the pathogen strain in the facility is capable of causing illness. Accordingly, because the isolates collected from Defendants' Facility matched the isolates from the CDC's listeriosis investigation, FDA has determined that the strain of *L. mono* in Defendants' Facility is capable of causing illness.

31.    Because the isolate from the Defendants' retail product sample collected by Hawaii in 2024 and the clinical isolates collected by CDC since 2014 match the strain of *L. mono* found in Defendants' Facility during the February 2024 inspection, this strain of *L. mono* is likely a resident strain that has existed in Defendants' Facility since at least 2014. The presence of a resident strain in a

1  facility indicates previous sanitation efforts have been ineffective in eradicating the *L. mono* from the

2  facility.

3  **Defendants' Responses Are Inadequate**

4     32.     On or about February 2, 2024, FDA informed Defendants Rizo Lopez and Edwin Rizo

5  that a strain of *L. mono* identified in an environmental subsample collected during the February 2024

6  inspection matched the strain of *L. mono* in the retail product sample and twenty-five[1] clinical isolates in

7  the CDC listeriosis investigation. After further discussions among Defendants, FDA, and CDC, on or

8  about February 5, 2024, Defendants recalled all RTE dairy products within expiry and temporarily

9  ceased operations.

10     33.     On February 12, 2024, FDA informed Defendants Rizo Lopez and Edwin Rizo that it

11  detected the same strain of *L. mono* in the second environmental subsample that had been identified in

12  the first environmental subsample, retail product sample, and twenty-five clinical isolates from the CDC

13  listeriosis investigation.

14     34.     On February 14, 2024, Rizo Lopez's Quality Assurance Manager sent FDA an email

15  stating that the company issued a facility-wide recall "out of an abundance of caution and to support the

16  practical administration of the recall." Defendants further stated, "We did not perform a risk assessment

17  of products made elsewhere in the facility or make a specific determination that the products we

18  supplied to [a buyer] were contaminated. For this reason, it would not be accurate for someone to

19  believe based on the scope of the recall that we made a determination one way or the other that [the

20  buyer's] products were contaminated." Defendants Edwin Rizo and Tomas Rizo were copied on the

21  email.

22     35.     On March 15, 2024 and April 12, 2024, Defendant Edwin Rizo, on behalf of Rizo Lopez,

23  responded to FDA's List of Inspectional Observations, stating that, among other things, Rizo Lopez was

24

25

26

27     [1] Due to differences in the laboratory sequencing methods used by CDC and FDA, in February
2024 FDA analyzed data for twenty-five of the twenty-six clinical isolates collected by CDC. In May
2024, FDA analyzed the remaining clinical isolate and determined that all twenty-six clinical isolates

28  match the identified strain of *L. mono*.

investigating potential contamination sources, revising policies and procedures, and implementing corrective actions.

36.      On or about May 23, 2024, Defendant Edwin Rizo, on behalf of Rizo Lopez, provided a supplemental response to FDA's List of Inspectional Observations stating that, among other things, Rizo Lopez had implemented corrective actions and hired a new Quality Assurance manager. The supplemental response also stated that Rizo Lopez planned, "to restart cheesemaking operations for fresco cheeses as soon as June 3, 2024." The supplemental response did not include sufficient evidence to show that *L. mono* had been eradicated from the Facility.

37.      On or about June 3, 2024, Rizo Lopez resumed food manufacturing operations, even though FDA still did not have sufficient assurance Rizo Lopez's food manufacturing operations were safe and that *L. mono* had been eradicated from the facility.

38.      In an email dated June 13, 2024, Rizo Lopez informed FDA that it "has stopped manufacturing food" and that "[t]he last day of production was . . . June 12, 2024." Rizo Lopez currently receives, holds, and distributes pre-packaged food.

39.      Defendants' responses and corrective actions are inadequate particularly given the ten-year history of a persistent strain of *L. mono* at Defendants' Facility that has resulted in multiple illnesses, including illnesses linked to two deaths and a fetal loss, as well as the recently observed insanitary conditions in Defendants' Facility. Adequate corrective actions would include, among other things, remediating the *L. mono* contamination, verifying through documentation that systematic contamination has been eradicated from the Facility, and establishing and ensuring adequate implementation of sanitation standard procedures for manufacturing food sufficient to identify and prevent contamination in the environment and products in the future. Without such corrective actions, there is a continued risk of *L. mono* contamination of the RTE foods manufactured at Defendants' Facility, posing a serious health risk to consumers.

40.      The United States believes that, unless restrained by order of this Court, Defendants will continue to violate 21 U.S.C. §§ 331(a) and (k).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests this Court to:

I.   Order that Defendants and each and all of their officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships), cease manufacturing, preparing, processing, packing, and/or distributing food at or from the Facility or at any other current or future location, unless and until Defendants bring their manufacturing, preparing, processing, packing and/or distributing operations for food into compliance with the Act and applicable regulations, to FDA's satisfaction;

II.  Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships) from directly or indirectly from violating: (a) 21 U.S.C. § 331(a), by introducing or delivering for introduction into interstate commerce, or causing to be introduced or delivered for introduction into interstate commerce, articles of food within the meaning of 21 U.S.C. § 321(f) that are adulterated within the meaning of 21 U.S.C. § 342(a)(4); and (b) 21 U.S.C. § 331(k), by causing articles of food within the meaning of 21 U.S.C. § 321(f) that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(a)(4);

III. Order that FDA be authorized to inspect Defendants' place of business and all records relating to the manufacturing, receiving, preparing, processing, packing, and/or distributing articles of food to ensure continuing compliance with the terms of the injunction, the costs of such inspection to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

IV.  Order that Plaintiff be awarded costs incurred in pursuing this action, including the costs of investigation to date, and such other equitable relief as the Court deems just and proper.

1    Dated this ___27th___ day of ___September___, 2024.

2

3

4                                        BRIAN M. BOYNTON

5                                        Principal Deputy Assistant Attorney
                                         General
6
                                         BURDEN H. WALKER
7                                        Acting Deputy Assistant Attorney General

8                                        AMANDA N. LISKAMM

9                                        Director
                                         Consumer Protection Branch
10
11                                       DAVID CROCKETT

12
                                         Trial Attorney
13                                       Consumer Protection Branch
                                         U.S. Department of Justice, Civil Division
14
15                                       OF COUNSEL:

16                                       SAMUEL R. BAGENSTOS
                                         General Counsel
17                                       United States Department of
                                         Health and Human Services
18
19                                       MARK RAZA
                                         Chief Counsel
20                                       Food and Drug Division

21                                       SHANNON M. SINGLETON
22                                       Deputy Chief Counsel for Litigation

23                                       LAUREN N. FASH
                                         Assistant Chief Counsel for Enforcement
24                                       U.S. Dep't of Health and Human Services
                                         Office of the General Counsel
25
26                                       Food and Drug Division

27

28

COMPLAINT FOR PERMANENT INJUNCTION            11

Exhibit 1 Page 51 of 51                54                    Exhibit 3
                                                              Page 11 of 11

# EXHIBIT 2

**Policy Number**
**ZAGLB1100403**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**

# ARCH INSURANCE COMPANY

Named Insured    RIZO LOPEZ FOODS, INC.

Effective Date: 01-01-23

12:01 A.M., Standard Time

Agent Name   GIDDINGS, CORBY, HYNES, INC.    Agent No. 36410

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| Coverage | | Limit of Liability | |
|---|---|---|---|
| Aggregate Limits of Liability | $ | 2,000,000 | Products/Completed Operations Aggregate |
| | $ | 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ | 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ | 300,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ | 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ | 10,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 3.** Retroactive Date

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: _____

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location of Premises

Forms of Business: CORPORATION
Location of All Premises You Own, Rent or Occupy:
   **See Schedule of Locations**

**Item 5.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
   **See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| Coverage Part Premium: | $ | 49,491.00 |
|---|---|---|
| Other Premium: | | |
| Total Premium: | $ | 49,491.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
**FAIC-SKLBUS-CGLDEC (6/01)**

Exhibit 2 Page 1 of 23     56

**Policy Number**
**ZAGLB1100404**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SUPPLEMENTAL DECLARATIONS

# ARCH INSURANCE COMPANY

Named Insured    RIZO LOPEZ FOODS, INC.

Effective Date: 01-01-24

12:01 A.M., Standard Time

Agent Name    GIDDINGS, CORBY, HYNES, INC.          Agent No.   36410

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| Coverage | | Limit of Liability | |
|---|---|---|---|
| Aggregate Limits of Liability | $ | 2,000,000 | Products / Completed Operations Aggregate |
| | $ | 2,000,000 | General Aggregate (other than Products / Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ | 1,000,000 | any one occurrence subject to the Products / Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ | 300,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ | 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ | 10,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 3.** Retroactive Date

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the

Retroactive Date, if any, shown here: _____

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location of Premises

Forms of Business: CORPORATION
Location of All Premises You Own, Rent or Occupy:
    **See Schedule of Locations**

**Item 5.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
    **See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| Coverage Part Premium: | $ | 55,996.00 |
|---|---|---|
| Other Premium: | | |
| Total Premium: | $ | 55,996.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
**FAIC-SKLBUS-CGLDEC (6/01)**

Exhibit 2 Page 2 of 23          57



**SOMPO INTERNATIONAL**

# Endurance American Specialty Insurance Company
### (Wilmington, Delaware)

| | |
|---|---|
| **Policy No.** | ELD30002726502 |
| **Renewal of:** | ELD30002726501 |

## COMMERCIAL EXCESS LIABILITY DECLARATIONS PAGE

---

**1. NAMED INSURED AND ADDRESS:**
Rizo Lopez Foods, Inc.
Per Underlying Insurance
PO Box 1689
Empire, CA 95319

**2. POLICY PERIOD:**
12:01 a.m. Standard Time at the address of the Insured shown at the left
**From:** 01/01/2023      **To:** 01/01/2024

---

**IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**PRODUCER'S NAME AND ADDRESS:**
RSG Specialty, LLC dba RT Specialty
5410 East High St
Suite 200
Phoenix, AZ 85054

---

**3. PREMIUM:**

| | |
|---|---|
| Total Advance Premium | $ 40,000 |
| Service Charge | N/A |
| Taxes | N/A |
| Surcharge | N/A |
| Total | $ 40,000 |

**BASIS OF PREMIUM:** Non-Auditable (X)     Auditable ()

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 10,000 as a policy minimum earned premium.

---

**4. LIMITS OF INSURANCE:**

| | |
|---|---|
| $ 10,000,000 | Each Occurrence Limit |
| $ 10,000,000 | Aggregate Limit (Where Applicable) |

These Limits of Insurance apply in excess of the "underlying limits of insurance" indicated in Item 5. of the Declarations.

---

**5. UNDERLYING INSURANCE:**      See attached schedule

---

**6. FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule EXL 0101.

_Eric Yates_
_____
Authorized Representative

**ISSUING OFFICE:**
725 South Figueroa Street, Suite 2100
Los Angeles, CA 90017

**NOTE: SEE ENCLOSED NOTICE FOR "SURPLUS LINES NOTIFICATION"**

# SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| Great American Insurance Company<br>01/01/2023 - 01/01/2024 | Umbrella | $ 10,000,000 Each Occurrence<br>$ 10,000,000 General Aggregate<br>$ 10,000,000 Products/Completed Operations Aggregate<br>Excess of Primary |
| | | |
| Everest Insurance Company<br>01/01/2023 - 01/01/2024 | Excess | $ 10,000,000 Each Occurrence<br>$ 10,000,000 General Aggregate<br>$ 10,000,000 Products/Completed Operations Aggregate<br>Excess of $ 10,000,000 |
| | | |

Exhibit 2 Page 4 of 23
Everest Premier Insurance Specialty Insurance Company  59                    EXL 0102 0606


SOMPO INTERNATIONAL

# Endurance American Specialty Insurance Company
### (Wilmington, Delaware)

**Policy No.**   ELD30002726503
**Renewal of:**   ELD30002726502

# COMMERCIAL EXCESS LIABILITY DECLARATIONS PAGE

**1.   NAMED INSURED AND ADDRESS:**
Rizo Lopez Foods, Inc.
Per Underlying Insurance
PO Box 1689
Empire, CA 95319

**2.   POLICY PERIOD:**
12:01 a.m. Standard Time at the address of the Insured shown at the left
**From:** 01/01/2024          **To:** 01/01/2025

**IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**PRODUCER'S NAME AND ADDRESS:**
RSG Specialty, LLC dba RT Specialty
5410 East High St
Suite 200
Phoenix, AZ 85054

**3.   PREMIUM:**

| | | |
|---|---|---|
| Total Advance Premium | $ 45,000 | |
| Service Charge | N/A | |
| Taxes | N/A | |
| Surcharge | N/A | |
| Total | $ 45,000 | |

**BASIS OF PREMIUM:**   Non-Auditable   (X)        Auditable   ()

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 11,250 as a policy minimum earned premium.

**4.   LIMITS OF INSURANCE:**
$ 10,000,000        Each Occurrence Limit
$ 10,000,000        Aggregate Limit (Where Applicable)

These Limits of Insurance apply in excess of the "underlying limits of insurance" indicated in Item 5. of the Declarations.

**5.   UNDERLYING INSURANCE:**                 See attached schedule

**6.   FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule EXL 0101.

_____
Authorized Representative

**ISSUING OFFICE:**
725 South Figueroa Street, Suite 2100
Los Angeles, CA 90017

**NOTE: SEE ENCLOSED NOTICE FOR "SURPLUS LINES NOTIFICATION"**

# SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| Indian Harbor Insurance Company<br>On File with Company<br>01/01/2024 - 01/01/2025 | Excess | $ 1,000,000 Each Occurrence<br>$ 1,000,000 Aggregate<br>Excess of Primary |
| | | |
| Great American Insurance Company<br>01/01/2024 - 01/01/2025 | Umbrella | $ 9,000,000 Each Occurrence<br>$ 9,000,000 General Aggregate<br>Excess of $ 1,000,000 |
| | | |
| Everest Insurance Company<br>01/01/2024 - 01/01/2025 | Excess | $ 10,000,000 Each Occurrence<br>$ 10,000,000 General Aggregate<br>$ 10,000,000 Products/Completed Operations Aggregate<br>Excess of $ 10,000,000 |
| | | |

# COMMERCIAL EXCESS LIABILITY DECLARATIONS CALIFORNIA

## EVEREST INDEMNITY INSURANCE COMPANY
100 Everest Way
Warren, NJ 07059
1-800-438-4375

**POLICY NUMBER:** XC1EX00444-231          **RENEWAL OF:** XC1EX00444-221

**PRODUCER NAME:**  RSG Specialty, LLC
**ADDRESS:**  11811 N. Tatum Blvd. Ste 4010
Phoenix, AZ 85028

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**ITEM 1.**    **NAMED INSURED:** Rizo Lopez Foods, Inc

**ADDRESS:** PO Box 1689, Empire, CA 95319

**ITEM 2:**    **POLICY PERIOD:  FROM** 01/01/2023 **TO** 01/01/2024
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**    **COVERAGE:** Commercial Excess Liability

**ITEM 4.**    **LIMITS OF INSURANCE:**
The Limits of Insurance, subject to all the terms of this Policy, are:
$10,000,000 Each Occurrence
$10,000,000 Annual Aggregate(s), Where Applicable (as defined in the "First
Underlying Insurance" Policy(ies)) Excess of Underlying Insurance.

**ITEM 5.**    **"UNDERLYING INSURANCE"**

**A. Underlying Insurance Policy(ies)**

| Insurer | Policy No. | Policy Period |
|---|---|---|

As per attached Schedule of Underlying Insurance

**B. Other Underlying Insurance Policy(ies)**

| Insurer | Policy No. | Policy Period |
|---|---|---|

As per attached Schedule of Underlying Insurance

ECVS EX DEC 009 01 21                                        Page 1 of 3

Exhibit 2 Page 7 of 23                    62

**ITEM 6.  POLICY PREMIUM:**

| <u>Advanced Premium</u> | <u>Minimum Premium</u> | <u>Minimum Earned Premium</u> |
|---|---|---|
| $80,000 | $80,000 | $20,000 |

| <u>Estimated Exposure</u> | <u>Rate Per</u> | <u>Audit Period</u> |
|---|---|---|
| N/A | N/A | N/A |

**ITEM 7.   NOTICES**
In the event of an occurrence,
claim or "suit", send all pertinent
facts to:

Everest National Insurance Company
Warren Corporate Center
100 Everest Way, Warren, NJ 07059
1-800-438-4375

**ITEM 8.   FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE ORIGINAL DATE OF ISSUE:**

| | |
|---|---|
| ECVS EX DEC 003 05 06 | SCHEDULE OF UNDERLYING INSURANCE |
| ECVS EX DEC 009 01 21 | COMMERCIAL EXCESS LIABILITY DECLARATIONS CALIFORNIA |
| EDEC 114 03 99 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| ILU 004 01 08 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| EN IL 20 MU 01 21 | ADVISORY NOTICE TO POLICYHOLDERS REGARDING TRADE OR ECONOMIC SANCTIONS |
| EIL 00 502 03 07 | COMPANY SIGNATURE PAGE (EVEREST INDEMNITY INSURANCE COMPANY) |
| EIL 00 514 01 08 | COMMON POLICY CONDITIONS – CALIFORNIA |
| EUM 00 522 02 07 | COMMERCIAL EXCESS LIABILITY COVERAGE FORM |
| CU 21 33 01 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| EUM 00 513 05 09 | EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION |
| EUM 21 609 04 06 | EXCLUSION - LEAD |
| EUM 21 707 02 07 | EXCLUSION – RADIOACTIVE MATERIAL OR EQUIPMENT |
| EUM 21 764 06 06 | EXCLUSION - E.R.I.S.A. |
| EUM 21 767 06 06 | EXCLUSION – WAR |
| EUM 21 874 04 09 | EXCLUSION – COVERAGE PROVIDED BY UNDERLYING INSURANCE AT SUB-LIMITS |
| EUM 21 902 05 14 | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION |
| EUM 22 528 05 06 | EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE |
| EUM 24 601 07 18 | EXCLUSION – UNMANNED AIRCRAFT ENDORSEMENT |
| EIL 01 510 07 08 | POLLUTION CHANGES |
| EUM 03 315 03 20 | COMMUNICABLE DISEASE EXCLUSION |
| EUM 21 797 06 06 | AUTO EXCLUSION OF TERRORISM COVERAGE |
| EUM 21 813 02 07 | EXCLUSION – PRODUCTS RECALL |
| EUM 21 827 04 09 | EXCLUSION – REAL PROPERTY IN THE CARE, CUSTODY OR CONTROL OF THE INSURED |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S) COMPLETE THE ABOVE NUMBERED POLICY.**

The foregoing discloses all hazards insured hereunder known to exist at the inception date of this Policy, unless otherwise stated herein by endorsement on this Policy.

COUNTERSIGNED _____ BY _____
                          DATE                        AUTHORIZED REPRESENTATIVE

| | |
|---|---:|
| Policy Premium | $80,000.00 |
| Surplus Lines Tax | $2,400.00 |
| SFCA | $144.00 |
| CBFCA | $500.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| **Total** | **$83,044.00** |

**COMMERCIAL EXCESS LIABILITY POLICY**
<u>**SCHEDULE OF UNDERLYING INSURANCE**</u>

| Named Insured: | Rizo Lopez Foods, Inc | Effective Date: | 1/1/2023 |
|---|---|---|---|
| Policy Number: | XC1EX00444-231 | Issuing Company: | Everest Indemnity Insurance Company |

The declarations, schedule(s), and all terms and conditions complete this insurance Policy.

---

**Type of Policy or Coverage**
**and**
**Insurer, Policy Number and Policy Period**　　　　　　　**Limits of Insurance**

**A. "First Underlying Insurance" Policy(ies)**

| | | | | |
|---|---|---|---|---|
| Coverage: | Umbrella Liability | | | |
| Carrier | Great American Insurance Company | $ | 10,000,000 | Each Occurrence/Annual |
| Policy # | TUU 0738671 10 | $ | 10,000,000 | Aggregate, Where Applicable |
| Policy Period: | 1/1/2023 - 1/1/2024 | | | |

---

**B. Other "Underlying Insurance" Policy(ies)**

---

| | | |
|---|---|---|
| Date of Issue: | January 11, 2023 | Authorized Representative: |

# COMMERCIAL EXCESS LIABILITY DECLARATIONS CALIFORNIA

## EVEREST INDEMNITY INSURANCE COMPANY
100 Everest Way
Warren, NJ 07059
1-800-438-4375

**POLICY NUMBER:** XC5EX01961-241      **RENEWAL OF:** XC5EX01961-231

**PRODUCER NAME:**   RSG Specialty, LLC
**ADDRESS:**   5410 E. High Street Suite 200
Phoenix, AZ 85054

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**ITEM 1.**    **NAMED INSURED:**   Rizo Lopez Foods, Inc
**ADDRESS:**   PO Box 1689
Empire, CA 95319

**ITEM 2.**    **POLICY PERIOD: FROM** <u>01/01/2024</u> **TO** <u>01/01/2025</u>
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**    **COVERAGE:** Commercial Excess Liability

**ITEM 4.**    **LIMITS OF INSURANCE:**
The Limits of Insurance, subject to all the terms of this Policy, are:
$<u>10,000,000</u> Each Occurrence
$<u>10,000,000</u> Annual Aggregate(s), Where Applicable (as defined in the "First Underlying Insurance" Policy(ies)) Excess of Underlying Insurance

**ITEM 5.**    **"UNDERLYING INSURANCE"**

     **A. <u>First Underlying Insurance Policy(ies)</u>**

| <u>Insurer</u> | <u>Policy No.</u> | <u>Policy Period</u> |
|---|---|---|
| As per attached Schedule of Underlying Insurance | | |

     **B. <u>Other Underlying Insurance Policy(ies)</u>**

| <u>Insurer</u> | <u>Policy No.</u> | <u>Policy Period</u> |
|---|---|---|
| As per attached Schedule of Underlying Insurance | | |

**ITEM 6.     POLICY PREMIUM:**

| Advanced Premium | Minimum Premium | Minimum Earned Premium |
|---|---|---|
| $ 90,000 | $ 90,000 | $ 22,500 |

| Estimated Exposure | Rate Per | Audit Period |
|---|---|---|
| NA | NA | NA |

**ITEM 7.     NOTICES**

In the event of an occurrence, claim or "suit", send all pertinent facts to:

Everest National Insurance Company
Warren Corporate Center
100 Everest Way, Warren, NJ 07059
1-800-438-4375

| | |
|---|---|
| Policy Premium | $90,000.00 |
| Surplus Lines Tax | $2,700.00 |
| SFCA | $162.00 |
| CBFCA | $500.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| Total | $93,362.00 |

**COMMERCIAL EXCESS LIABILITY POLICY**
<u>**SCHEDULE OF UNDERLYING INSURANCE**</u>

| Named Insured: | Rizo Lopez Foods, Inc | Effective Date: | 01/01/2024 |
|---|---|---|---|
| Policy Number: | XC5EX01961-241 | Issuing Company: | Everest Indemnity Insurance Company |

The declarations, schedule(s), and all terms and conditions complete this insurance Policy.

**Type of Policy or Coverage**
**and**
**Insurer, Policy Number and Policy Period**       **Limits of Insurance**

**A. "First Underlying Insurance" Policy(ies)**

| Coverage: | Excess Liability | | |
|---|---|---|---|
| Carrier | Great American Insurance Company | $ | 9,000,000 Each Occurrence |
| Policy # | TUE 0738671 11 | $ | 9,000,000 Aggregate |
| Policy Period: | 01/01/2024 - 01/01/2025 | | |

**B. Other "Underlying Insurance" Policy(ies)**

| Coverage: | Umbrella Liability | | |
|---|---|---|---|
| Carrier | Indian Harbor Insurance Company | $ | 1,000,000 Each Occurrence |
| Policy # | ZAGLB1100404 | $ | 1,000,000 Aggregate |
| Policy Period: | 01/01/2024 - 01/01/2025 | | |

| Date of Issue: | January 18, 2024 | Authorized Representative: |
|---|---|---|

Filed 01/23/26                    Case 25-25004                                    Doc 377

248311

**GAI 6001 (Ed. 06 97)**

**Policy No.** TUU  0-73-86-71 - 10
**Renewal Of** TUU  0-73-86-71 - 09

## THE  PROTECTOR  COMMERCIAL  UMBRELLA  DECLARATIONS  PAGE

| | |
|---|---|
| **1.  NAMED INSURED AND ADDRESS:**<br>RIZO LOPEZ FOODS, INC.<br>P.O. BOX 1689<br>EMPIRE, CA  95319 | **2.  POLICY PERIOD:**<br>12:01 A.M. Standard Time at the address of the Named Insured shown at left.<br>From  01-01-2023  To  01-01-2024 |
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **PRODUCER'S NAME AND ADDRESS:**<br>AG PROVIDERS<br>INSURANCE SERVICES, LLC<br>P.O. BOX 3231<br>MODESTO, CA  95353 |

Insurance is afforded by:
   GREAT AMERICAN INSURANCE COMPANY

**3.  PREMIUM:**

| | |
|---|---|
| Commercial Umbrella Premium | $ 176,131. |
| Personal Umbrella Premium | $ |
| Total Advance Premium | $ 176,131. |
| Service Charge | $ |
| Taxes | $ |
| Surcharge | $ |
| Total | $ 176,131. |

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 44,033.         as a policy minimum premium.

**BASIS OF PREMIUM:**  Non-Auditable ( X )   Auditable (   )

**4.  LIMITS OF INSURANCE:**  $ 10,000,000.   Each Occurrence
                                  $ 10,000,000.   General Aggregate (Where Applicable)
                                  $ 10,000,000.   Products-Completed Operations Aggregate

**5.  SELF-INSURED RETENTION:  $** 10,000.

**6.  FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 6013 (Ed. 06/97).

Exhibit 2 Page 14 of 23                    69

GAI 6001 (Ed. 06/97)                    (Page 1 of 1)

Filed 01/23/26  Case 25-25004  Doc 377

248311

GAI 6003
(Ed. 06 97)

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) ARCH INSURANCE COMPANY POL: ZAWCI9406806 1/1/23 TO 1/1/24 | Employers Liability | Bodily Injury By Accident<br>$ 1,000,000.  each accident<br>Bodily Injury By Disease<br>$ 1,000,000.  policy limit<br>$ 1,000,000.  each employee |
| b) ARCH INSURANCE COMPANY POL: ZACAT1200703 1/1/23 TO 1/1/24 | Automobile/Garage<br>( X ) Any Automobile<br>(   ) Owned Automobile Only<br>(   ) Specifically Designated Automobile<br>(   ) Hired Automobile<br>(   ) Non-owned Automobile<br>(   ) Garage Liability<br>( X ) DEFENSE OUTSIDE THE LIMIT | (   ) Split Limit<br>Bodily Injury Liability<br>$  each person<br>$  each accident<br>Property Damage Liability<br>$  each accident<br>( X ) Combined Single Limit<br>$ 1,000,000.  each accident<br>(   ) Garage Operations<br>$  Auto only each accident<br>$  Other than auto each accident<br>$  Other than auto aggregate |
|  | (   ) Garagekeepers Liability | $  each location |

Exhibit 2 Page 15 of 23  70
GAI 6003 (Ed. 06/97) PRO  (Page 1 of 2)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| **c)** ( ) | Comprehensive General Liability including | ( ) Split Limit<br><br>Bodily Injury Liability |
| | ( ) Products-Completed Operation Liability | $    each occurrence<br><br>$    aggregate |
| | ( ) Broad Form Endorsement | Property Damage Liability |
| | ( ) | $    each occurrence<br><br>$    aggregate |
| | | ( ) Combined Single Limit |
| | ( ) | $    each occurrence<br><br>$    aggregate |
| OR | OR | OR |
| ( X )<br>ARCH INSURANCE COMPANY<br>POL: ZAGLB1100403<br>1/1/23 TO 1/1/24 | Commercial General Liability | $2,000,000.   General Aggregate Limit |
| | ( X ) Occurrence Form | $2,000,000.   Products-Completed Operation Aggregate Limit |
| (X) DEFENSE OUTSIDE THE LIMIT | ( ) Claims-Made Form<br><br>( ) | $1,000,000.   Personal and Advertising Injury Limit |
| Retroactive Date | | $1,000,000.   Each Occurrence Limit |
| **d)** | | |

**TAU 9501 (Ed. 11 97)**

| | |
|---|---|
| **Policy No.** TUE 0738671 | - 11 |
| **Renewal Of** TUU 0738671 | - 10 |

## EXCESS LIABILITY POLICY DECLARATIONS

**ITEM 1. NAMED INSURED AND MAILING ADDRESS:**
RIZO LOPEZ FOODS, INC.
P.O. BOX 1689
MODESTO, CA 95353

**ITEM 2. POLICY PERIOD:**
12:01 A.M. Standard Time at the mailing address of the Named Insured shown at left.
From 01/01/2024 To 01/01/2025

**IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**AGENT'S NAME AND ADDRESS:**
HUB INTERNATIONAL INSURANCE SERVICES
4335 NORTH STAR WAY
SUITE D
MODESTO, CA 85356

Insurance is Afforded by Company indicated below:
GREAT AMERICAN INSURANCE COMPANY
(A capital stock corporation)

**ITEM 3. POLICY PREMIUM:**
$ 137,214.
**PREMIUM BASIS:** ( X ) Flat ( ) Auditable

**POLICY MINIMUM PREMIUM:**
$ 34,304.

**ITEM 4. LIMITS OF INSURANCE:**
The Company's Liability under this policy will not exceed the following limit: 100 percent of "loss" excess of Underlying Insurance stated in Item 5. of the Declarations, but for no greater than:
$ 9,000,000. Each Occurrence
$ 9,000,000. Aggregate Limit (where applicable)

**ITEM 5. SCHEDULE OF UNDERLYING INSURANCE:**

**First Underlying Insurance Policy**
**Insurer, Policy No., Policy Period**      **Applicable Limit**
INDIAN HARBOR INSURANCE COMPANY      $ 1,000,000. Each Occurrence
POLICY: SXS0064967, 1/1/24-1/1/25      $ 1,000,000. Aggregate Limit
(where applicable)

**Other Underlying Insurance (Excess of First Underlying Insurance Policy)**      **Applicable Limit**
N/A      $ N/A Each Occurrence
$ N/A Aggregate Limit
(where applicable)

**ITEM 6. FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule, TAU 9997 (Ed. 11/97).

Countersigned _____ By _____

       Date            Authorized Representative





**Regulatory Office**
Dept: Regulatory
505 Eagleview Blvd., Suite 100
Exton, PA 19341-1120
Telephone:  800-688-1840

Insurance Company Providing Coverage: INDIAN HARBOR INSURANCE COMPANY

# Excess Liability Policy Declarations

Policy Number:  SXS0064967      Renewal or Replacement of:  New Policy

**Item 1.**    **Named Insured:**    RIZO LOPEZ FOODS, INC.

            **Address:**    PO BOX 1689

                           EMPIRE, CA 95319

**Item 2.**    **Policy Period:**    From:  January 1, 2024      To:  January 1, 2025

                                   12:01 A.M. Standard time at the Named Insured's address stated above.

**Item 3.**    **Limits of Insurance:**    $   1,000,000    Each Occurrence

                                    $   1,000,000    Aggregate Limit(s) (where applicable)

**Item 4.**    **Underlying Insurance:**    *Please see attached Schedule of Underlying Insurance.*

**Item 5.**    **Premium is Payable:**    $   61,715    Policy Premium

                                    $   Rejected    Premium for Certified Acts of Terrorism

                                    $   61,715    Total Policy Premium

                                    $   NA    Surcharge/Fee

                                    $   61,715    **Total Amount Due**

**Item 6.**    **Form(s) and Endorsement(s) made a part of this policy at time of issue:**

| Endorsement Number | Endorsement Title |
|---|---|
| PN CW 02 0119 | Privacy Policy |
| PN CW 01 0123 | Fraud Notice |

| PN CW 05 0519 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") |
|---|---|
| PN CA 05 0120 | California Surplus Lines Notice |
| PN CA 02 0119 | Important Information to Policyholders - California |
| IL MP 9104 0314 IHIC | In Witness - Indian Harbor Insurance Company |
| CXU 300 0116 | Schedule of Underlying Insurance |
| CXU 050 0509 | Excess Liability Policy |
| CXU 623 0509 Endorsement No. 001 | Employment-Related Practices Liability Exclusion |
| CXU 654 0509 Endorsement No. 002 | No-Fault, Uninsured or Underinsured Motorist Exclusion |
| CXU 659 0813 Endorsement No. 003 | Violation of Communication or Information Law Exclusion |
| CXU 904 0115 Endorsement No. 004 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| SLX 400 1013 Endorsement No. 005 | Amendment To Insuring Agreement |
| CXU 449 0916 Endorsement No. 006 | Multinational Coverage Endorsement |
| CXU 670 0320 Endorsement No. 007 | Access or Disclosure of Confidential or Personally Identifiable Information and Data-Related Liability Exclusion |
| CXU 633 0509 Endorsement No. 008 | Lead Exclusion |
| CXU 650 0509 Endorsement No. 009 | Silica or Silica-Related Dust Exclusion |
| CXU 652 0509 Endorsement No. 010 | Total Pollution Exclusion |
| CXU 657 0509 Endorsement No. 011 | War Exclusion |
| CXU 628 0509 Endorsement No. 012 | Fungi or Bacteria Exclusion |
| CXU 625 0509 Endorsement No. 013 | Exterior Insulation and Finishing System / Direct Exterior Finishing System Exclusion |
| SLX 405 0514 Endorsement No. 014 | Minimum Earned Premium |
| CXU 424 0119 Endorsement No. 015 | Duties in the Event of an Occurrence, Claim or Suit Amendatory Endorsement |
| CXU 440 0715 Endorsement No. 016 | Issuance of the Excess Liability Policy Prior to Receipt of the Controlling Underlying Policy Endorsement |
| MANUSXS 0178 0116 Endorsement No. 017 | Product Recall Exclusion |
| SLX 408 0719 Endorsement No. 018 | Lead Excess Amendatory |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

Exhibit 2 Page 19 of 23

| CXU 697 0623 Endorsement No. 019 | PFAS / PFOA / PFOS Exclusion |
|---|---|
| CXU 709 0623 Endorsement No. 020 | Communicable Disease Exclusion with Foodborne Illness Exception |
| CXU 715 0623 Endorsement No. 021 | Sub-Limited Coverage Exclusion |
| XL-CASOP 0118 Endorsement No. 022 | Service of Process |

**Item 7.**  **Producer Name:**   RSG Specialty, LLC operating as RT Specialty

**Address:**   5410 E. High Street

Suite 200

Phoenix, AZ 85054


_____
Authorized Representative


THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**Date Issued:**        01/17/2024


| | |
|---:|---:|
| Policy Premium | $61,715.00 |
| Surplus Lines Tax | $1,851.45 |
| SFCA | $111.09 |
| CBFCA | $500.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| Total | **$64,177.54** |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Joseph A. Tocco
President

_____
Toni Ann Perkins
Secretary

IL MP 9104 0314 IHIC

Exhibit 2 Page 76 of 90
© 2013 XL America, Inc.  All rights reserved.  May not be copied without permission.

Effective Date:      January 1, 2024          Issue Date:    01/17/2024

Attached to and forming part of Policy No.:        SXS0064967

Issued To:    RIZO LOPEZ FOODS, INC.

By:        Indian Harbor Insurance Company

*This endorsement changes the policy. Please read it carefully.*

This endorsement modifies insurance provided under the following:

# Schedule of Underlying Insurance

**Excess Liability Policy**

It is agreed that Item 4. Underlying Insurance, of the Declarations is completed as follows:

**Item A.  CONTROLLING UNDERLYING POLICY**

Coverage:        General Liability
Insurer:        Arch Ins Co
Policy Number:    ZAGLB1100404
Policy Period:    January 1, 2024 to January 1, 2025
        $    1,000,000        Each Occurrence
        $    2,000,000        General Aggregate
        $    2,000,000        Products-Completed Operations Aggregate
        $    1,000,000        Personal and Advertising Injury Limit

**Item B.  ALL UNDERLYING INSURANCE**

Coverage:        General Liability
Insurer:        Arch Ins Co
Policy Number:    ZAGLB1100404
Policy Period:    January 1, 2024 to January 1, 2025
        $    1,000,000        Each Occurrence
        $    2,000,000        General Aggregate
        $    2,000,000        Products-Completed Operations Aggregate
        $    1,000,000        Personal and Advertising Injury Limit
        Defense expenses are in addition to the limits

Coverage:        Auto Liability
Insurer:        Arch Ins Co
Policy Number:    ZACAT1200704
Policy Period:    January 1, 2024 to January 1, 2025
        $    1,000,000        Combined Single Limit
        Defense expenses are in addition to the limits

Coverage:        Employers Liability (All States)
Insurer:           Arch Insurance Company
Policy Number:   ZAWCI9406807
Policy Period:     January 1, 2024 to January 1, 2025

| | |
|---|---|
| $ 1,000,000 | Bodily Injury by Accident - Each Accident |
| $ 1,000,000 | Bodily Injury by Disease - Policy Limit |
| $ 1,000,000 | Bodily Injury by Disease - Each Employee |

Defense expenses are in addition to the limits

In any jurisdiction, state, or province where the amount of Employers Liability Insurance provided by the Underlying Insurer(s) is by law "Unlimited", the underlying Employers Liability limit(s) shown in the above schedule do not apply and no coverage shall be provided for Employers Liability under this policy.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

# EXHIBIT 3

**Melanie E. Rose, OSB No. 124394**
mrose@smithfreed.com
**Duncan J. Campbell, OSB No. 203547**
dcampbell@smithfreed.com
Smith Freed Eberhard
111 SW Columbia Street, Suite 800
Portland, OR 97201
Tel: (503) 227-2424
*Attorneys for Defendant*
*Rizo-Lopez Foods, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| RESER'S FINE FOODS, INC. d/b/a FRESH CREATIVE FOODS, | ) ) | Case No. 3:24-cv-01963-SB |
| Plaintiff, | ) ) ) ) | **FURTHER JOINT STATUS REPORT AND JOINT STIPULATION REGARDING CASE SCHEDULING** |
| vs. | ) ) | |
| RIZO-LOPEZ FOODS, INC., and CASTLE IMPORTING, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

Pursuant to the Court's Order (Dkt. 39), Plaintiff Reser's Fine Foods, Inc. d/b/a Fresh

Creative Foods ("Plaintiff") and Defendants Rizo-Lopez Foods, Inc. and Castle Importing, Inc.

(collectively the "Parties") herby submit this Joint Status Report.

**FURTHER JOINT STATUS REPORT**

On November 22, 2024 Plaintiff filed its complaint. Dkt. 1. On January 14, 2025 Rizo-

Lopez Foods, Inc. filed its motion to dismiss for lack of jurisdiction. Dkt. 17. On January 14,

2025 Castle Importing, Inc. filed its answer to Plaintiff's complaint and filed its crossclaim

against Rizo-Lopez Foods, Inc. Dkt. 20. On January 28, 2025 Plaintiff filed its opposition to

Plaintiff's motion for lack of jurisdiction. Dkt. 22.

  To date, the Court has granted the Parties' requests to extend the deadline to file responsive pleadings. *See* Dkt. 29, 31, 33, and 35. On April 9, 2025 the Court granted the Parties' stipulated motion to extend deadlines and ordered: (1) Plaintiff respond to Castle Importing, Inc.'s answer and cross-complaint by April 25, 2025, (2) Rizo-Lopez Foods, Inc. deadline to respond to Castle Importing, Inc.'s cross-claims is April 25, 2025, and (3) Rizo-Lopez Foods, Inc.'s deadline to file its reply in support of its motion to dismiss is April 25, 2025. Dkt. 37. However, on April 29, 2025 the Court granted the Parties motion to stay the proceedings pursuant to the Parties' scheduled mediation. Dkt. 39.

  The following responsive pleadings have not been filed to date: (1) Plaintiff's response to Castle Importing, Inc.'s answer and cross-complaint, (2) Rizo-Lopez Foods, Inc.'s response to Castle Importing, Inc.'s crossclaims, and (3) Rizo-Lopez Foods, Inc.'s reply in support of its motion to dismiss.

  The Parties originally scheduled their mediation to occur over July 28 and July 29, 2025 with the Hon. Sidney Schenkier (Ret.). However, Defendant Rizo Lopez unilaterally cancelled this mediation. Despite this cancellation, the Parties hope to attend mediation at a future date. This Further Joint Status Report is filed concurrently with a Joint Alternative Dispute Resolution Report.

### PROPOSED UPDATED CASE SCHEDULE

  Rizo-Lopez Foods, Inc. circulated the below proposed updated case schedule at 3:31pm on August 20, 2025. Counsel for Castle Importing, Inc. has no objection. Due to time zone differences, lead counsel for Plaintiff was unable to review and approve the proposed updated case schedule prior to the filing deadline, but will raise any issues with the proposed schedule as

quickly as possible and the Parties will confer further if necessary to resolve any issues raised by counsel for Plaintiff.

1. Deadline for Plaintiff to file its response to Castle Importing, Inc.'s answer and cross-complaint—September 17, 2025

2. Deadline for Rizo-Lopez to file its response to Castle Importing, Inc.'s cross-claims—September 17, 2025

3. Deadline for Rizo-Lopez Foods, Inc. to file its reply in support of its motion to dismiss—September 17, 2025

4. Motion or Stipulation to Amend Pleadings or Add New Parties—September 8, 2025

5. Deadline to Provide Corporate Disclosure Statement—September 15, 2025

6. Rule 16 Court Conference—September 22, 2025

7. Close of Fact Discovery—April 6, 2026

8. Primary Expert Disclosure—April 20, 2026

9. Primary Expert Report—May 18, 2026

10. Close of Expert Discovery—July 6, 2026

11. Deadline to File Pretrial Motions—August 3, 2026

12. Mandatory Settlement Conference—September 7, 2026

13. Final Pretrial Conference—September 21, 2026

/ / /


/ / /


/ / /

For the reasons stated above, the parties respectfully request that this Court adopt the case management schedule proposed above.

DATED this 20th day of August, 2025.


s/Timothy J. Coleman
Timothy J. Coleman, OSB No. 841970
Email: tcoleman@sussmanshank.com
1000 SW Broadway Ste 1400
Portland, OR 97205
Telephone: 503.972.9213
Attorney for Plaintiff

s/Melanie E. Rose
Melanie E. Rose, OSB No. 124394
Email: mrose@smithfreed.com
Duncan J. Campbell, OSB No. 203547
Email: dcampbell@smithfreed.com
111 SW Columbia St, Suite 800
Portland OR  97201
Telephone: 503.227.2424
Attorneys for Defendant Rizo-Lopez Foods, Inc.


s/Julie Bardacke Haddon
Julie Bardacke Haddon, OSB No. 004884
Email: jhaddon@grsm.com
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: 503.222.1075
Of Attorneys for Castle Importing, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, the foregoing **Further Joint Status Report** on:

| | |
|---|---|
| Timothy J. Coleman<br>Sean McClendon<br>Sussman Shank<br>1000 SW Broadway, Suite 1400<br>Portland, OR 97205<br>tcoleman@sussmanshank.com<br>*Of Attorneys for Plaintiff* | Julie Bardacke Haddon<br>Gordon Rees Scully Mansukani, LLP<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>jhaddon@grsm.com<br>*Of Attorneys for Defendant*<br>*Castle Importing, Inc.* |

by the following indicated method or methods:

 __XX__   by electronic means through the Court's Case Management/Electronic Case File system on the date set forth above.

 __XX__   by mailing a full, true and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney as shown above, the last-known office address of the attorney, and deposited with the United States Postal Service at Portland, Oregon on the date set forth above.

 _____   by faxing a full, true and correct copy thereof to the attorney at the fax number shown above, which is the last-known fax number for the attorney's office, on the date set forth below. The receiving fax machine was operating at the time of service and the transmission was properly completed, according to the attached confirmation report.

DATED this 20th day of August, 2025.

SMITH FREED EBERHARD P.C.

By:*/s/ Melanie E. Rose*_____
Melanie E. Rose, OSB No. 124394
mrose@smithfreed.com
Duncan J. Campbell, OSB No. 203547
Email: dcampbell@smithfreed.com
Smith Freed Eberhard P.C.
111 S.W. Columbia Street, Suite 800
Portland, Oregon 97201
Telephone: 503-227-2424
Facsimile: 503-227-2535
 Attorneys for Defendant Rizo-Lopez Foods, Inc.

CERTIFICATE OF SERVICE                                    *330113*

Exhibit 3 Page 5 of 7                        84

SMITH FREED EBERHARD, P.C.<br>111 S.W. Columbia Street, Suite 800<br>Portland, Oregon 97201<br>(503) 227-2424 - Fax (503) 227-2535

**3:24-cv-01963-SB** Reser's Fine Foods, Inc. v. Rizo-Lopez Foods, Inc. et al
Stacie F. Beckerman, presiding
**Date filed:** 11/22/2024
**Date of last filing:** 10/29/2025

## Docket Information and Related Docket Entries
### Case 3:24-cv-01963-SB Document 46

**Filed:**        09/09/2025
**Entered:**      09/09/2025
**Entered By:**   Giselle Williams,
**Event Name(s):** Scheduling Order
**Full Docket Text for Document 46:**
**SCHEDULING ORDER:** Adopting in part the parties' Further Joint Status Report and Joint Stipulation Regarding Case Scheduling (ECF No. 41 ). Plaintiff's response to Defendant Castle Importing, Inc.'s Answer to Plaintiff's Complaint and Cross-Claim Against Defendant Rizo-Lopez Foods, Inc. (ECF No. 20 ) is due by 9/17/2025. Rizo-Lopez's response to Castle Importing's cross claims (ECF No. 20 ) is due by 9/17/2025. Rizo-Lopez Foods, Inc.'s Reply in support of its Motion to Dismiss (ECF No. 17 , which has been un-terminated) is due by 9/17/2025. Fact Discovery is to be completed by 4/6/2026. Primary expert disclosures are due 4/20/2026. Primary expert reports are due by 5/18/2026. Expert Discovery to be completed by 7/6/2026. The Court notes that the parties have already filed corporate disclosure statements. Ordered by Magistrate Judge Stacie F. Beckerman. (gw)

No Related Docket Entries

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/12/2026 09:32:01 | | | |
| **PACER Login:** | Suss0023 | **Client Code:** | 11111-001 |
| **Description:** | Related Transactions | **Search Criteria:** | 3:24-cv-01963-SB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

Exhibit 3 Page 6 of 7                                                    85

Query    Reports    Utilities    Help    Log Out

**3:24-cv-01963-SB** Reser's Fine Foods, Inc. v. Rizo-Lopez Foods, Inc. et al
Stacie F. Beckerman, presiding
**Date filed:** 11/22/2024
**Date of last filing:** 10/29/2025

**Docket Information and Related Docket Entries**
**Case 3:24-cv-01963-SB Document 52**

**Filed:**          09/18/2025
**Entered:**          09/18/2025
**Entered By:**    Giselle Williams,
**Event Name(s):**  Scheduling Order
**Full Docket Text for Document 52:**
**SCHEDULING ORDER:** Joint Status Report regarding Defendant Rizo-Lopez Foods, Inc.'s Chapter 11 bankruptcy filing is due by 3/17/2026. Ordered by Magistrate Judge Stacie F. Beckerman. (gw)

No Related Docket Entries

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/12/2026 09:24:18 | | | |
| **PACER Login:** | Suss0023 | **Client Code:** | 11111-001 |
| **Description:** | Related Transactions | **Search Criteria:** | 3:24-cv-01963-SB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

Exhibit 3 Page 7 of 7                          86

# EXHIBIT 4

**3**

1    Howard M. Levine, Oregon State Bar No. 800730 *(pro hac vice)*
     Timothy J. Coleman, Oregon State Bar No. 841970 *(pro hac vice)*
2    SUSSMAN SHANK, LLP
     1000 SW Broadway, Ste. 1400
3    Portland, OR  97205
     Telephone:     (503) 227-1111
4    Email:         hlevine@sussmanshank.com
                    tcoleman@sussmanshank.com
5
     Paul J. Pascuzzi, State Bar No. 148810
6    Jason E. Rios, State Bar No. 190086
     Mikayla E. Kutsuris, State Bar No. 339777
7    FELDERSTEIN FITZGERALD
       WILLOUGHBY PASCUZZI & RIOS LLP
8    500 Capitol Mall, Suite 2250
     Sacramento, CA  95814
9    Telephone:     (916) 329-7400
     Facsimile:     (916) 329-7435
10   Email:         ppascuzzi@ffwplaw.com
                    jrios@ffwplaw.com
11                  mkutsuris@ffwplaw.com
12
     Attorneys for Reser's Fine Foods, Inc.
13

14                   UNITED STATES BANKRUPTCY COURT

15                   EASTERN DISTRICT OF CALIFORNIA

16                        SACRAMENTO DIVISION

17   In re                                  Case No. 25-25004

18   RIZO-LÓPEZ FOODS, INC.,                Chapter 11

19                                          DCN:  FWP-1
                    Debtor in Possession.
20                                          Date:      February 25, 2026
21                                          Time:      11:00 a.m.
                                            Location:  Courtroom 35 (Dept. C)
22                                          Judge:     Hon. Christopher M. Klein
23
     ─────────────────────────────────

24   **[Proposed] ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC
     STAY TO CONTINUE LITIGATION IN THE UNITED STATES DISTRICT COURT
25       FOR THE DISTRICT OF OREGON TO RECOVER INSURANCE PROCEEDS**

26          Having considered the motion of creditor Reser's Fine Foods, Inc., ("Reser") for entry of

27   an *Order Granting Motion for Relief from the Automatic Stay to Continue Litigation in the United*

28   *States District Court for the District of Oregon to Recover Insurance Proceeds* and the Court

having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having authority pursuant to 11 U.S.C. § 362(d) to order relief from the automatic stay; and due and proper notice of the Motion having been provided under the circumstances and in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation thereon and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1. The *Motion for Relief from the Automatic Stay to Continue Litigation in the United States District Court for the District of Oregon to Recover Insurance Proceeds* filed at ECF No. _____ is granted.

2. The automatic stay imposed by section 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")[1] is hereby terminated pursuant to 11 U.S.C. §§ 362(d)(1) to Reser, and any of its agents, successors-in-interest and assignees, to prosecute the action pending against the Debtor and other defendants in the United States District Court for the District of Oregon (Case no. 3:24-cv-01963-SB) (the "District Court Case") and proceed with all necessary actions to adjudicate the District Court Case through final judgment, including against the Debtor and all non-debtor defendants.

3. For purposes of this order, any judgment entered in the District Court Case shall liquidate Reser's proof of claim filed in the Debtor's bankruptcy case, but any action to enforce the judgment against the Debtor or its assets shall remain subject to the automatic stay. The

///

---

[1] Unless otherwise indicated, all section references in this Order are to the "Bankruptcy Code," 11 U.S.C. §§ 101, *et seq.*

automatic stay is modified so that Reser may assert all remedies to seek or obtain recovery from the proceeds of any applicable insurance policies of the Debtor and from other non-debtor parties.

　　　　4.　　This Order is effective immediately, and the fourteen (14) day stay period imposed by Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure is waived.

　　　　5.　　This Order shall be binding on any subsequently appointed trustee in this bankruptcy case.

　　　　6.　　This Court shall retain jurisdiction to resolve any disputes or controversies arising from this Order.

Dated:

_____
Christopher M. Klein
United States Bankruptcy Court

CASE NO. 25-25004
ORDER RE MOTION FOR
RELIEF FROM THE AUTOMATIC STAY