**QUARLES & BRADY LLP**
Amelia Valenzuela, Esq. (CA Bar No. 320428)
L. Katie Mason, Esq. (admitted *pro hac vice* )
Randy J. Pflum, Esq. (admitted *pro hac vice*)
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
Telephone: 602-229-5635
Facsimile: 602-229-5690
Email:  amelia.valenzuela@quarles.com
Email:  katie.mason@quarles.com
Email:  randy.pflum@quarles.com
*Attorneys for Sargento Foods Inc. and Sargento Cheese Inc.*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>RIZO-LÓPEZ FOODS, INC.,<br><br>Debtor. | Case No. 25-25004-C-11<br><br>DC No.: QB-1<br><br>Date: February 25, 2026<br>Time: 11:00 a.m. (PST)<br>Dept.: C<br><br>Judge: Honorable Christopher M. Klein |

**MOTION OF SARGENTO FOODS INC. AND SARGENTO CHEESE INC. FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT CONTINUED LITIGATION IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN AND TO RECOVER INSURANCE PROCEEDS**

Sargento Foods Inc. and Sargento Cheese Inc., on behalf of themselves and their successors, assigns, and subrogees (collectively, "Sargento"), by and through undersigned counsel, files this *Motion for Entry of an Order Modifying the Automatic Stay to Permit Continued Litigation in the United States District Court for the Eastern District of Wisconsin And to Recover Insurance Proceeds*, ("Motion") under 11 U.S.C. § 362(d)(1), Fed. R. Bankr. Pro. 4001(a)(1), and LBR 4001-1 and 9014-1(f)(1) seeking entry of an order modifying the automatic stay to permit Sargento, its agents, successors-in-interest, and assignees, to prosecute the action pending against the Debtor in the United States District Court for the Eastern District of Wisconsin (Case No. 2:24-cv-00308-PP) (the "District Court Case") solely for the purposes of liquidating Sargento's claims against the Debtor and proceeding against available insurance proceeds.

1

While Sargento remains willing to engage in a mediation process with the Debtor's insurers within the Bankruptcy Case and believes that such a process would be prudent to prevent a "race to the courthouse" in which claimants holding recall claims against the Debtor each seek relief from the automatic stay in an effort to be the first to litigate their claims to judgment and dissipate available insurance proceeds, Sargento files this Motion to ensure that other recall claimants such as Reser's Fine Foods, Inc. ("Reser's") do not obtain an unfair advantage by obtaining relief while Sargento's District Court Case remains stayed. In the event the Court denies Reser's motion for relief from stay and all other motions for relief from stay filed by similarly-situated recall claimants, Sargento will withdraw this Motion without prejudice.

In support of this Motion, Sargento states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are Sections 362 and 541 of the United States Bankruptcy Code ("Code"), Federal Rules of Bankruptcy Procedure 4001 and 9014, Local Rules 4001-1 and 9014-1

## II. BACKGROUND AND PARTIES

### a. The Recall

3. On September 15, 2025, the Debtor filed this case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). Debtor continues to operate its business as debtor-in-possession under Sections 1107 and 1108 of the Code.

4. Before the Petition Date, Sargento purchased Aged Cotija Mexican Grating Cheese ("Recalled Product") from the Debtor under purchase order 4500386694 ("Purchase Order"). (Price Dec. at ¶¶ 2-4).

5. On or around January 12, 2024, Debtor notified Sargento that it was recalling a batch of "Aged Cotija Mexican Granting Cheese" (the "Recall") that it sold to Sargento (the "Recall Letter"). (Price Dec. at ¶ 5).

QB\100343211.1

6.  The Recall Letter stated, in relevant part, that the Debtor initiated the Recall based on the following:

> This letter is to notify you [that] Rizo Lopez Foods, Inc. has voluntarily recalled 344 cases (1,065) pounds of our artisanal Rizo Brothers brand "Aged Cotija Mexican Granting Cheese" (8oz), UPC 72724200043 batch number 4DW-23318, because it has the potential to be contaminated with *Listeria monocytogenes*.
>
> ***
>
> We were notified by the State of Hawaii Department of Health on Wednesday, January 10, 2024, that a single 8oz. package tested positive for *Listeria monocytogenes as part of their routine sampling program*. We immediately identified distributors who received the product in question and sent notification directing them to remove the recalled product from distribution and return or destroy any remaining product. We also directed them to notify their customers who had received their product and to do the same.

(Price Dec. at ¶ 5).

7.  As a result of the Recall, Sargento suffered not less than $26,645,580.00 in damages. (Price Dec. at ¶ 6).

8.  To pursue its damages from the Recall, on March 8, 2024, Sargento filed its Complaint against the Debtor in the District Court Case styled *Sargento Foods Inc. et al. v. Rizo-Lopez Foods, Inc.*, E.D. Wis. Case No. 2:24-cv-00308-PP (Price Dec. at ¶ 7). A true and correct copy of the Complaint is attached to the Exhibit List as **Exhibit 1** and incorporated herein by reference.

9.  As set forth in Sargento's timely filed proofs of claim, Sargento holds a claim against the Debtor for no less than $26,645,580.00 in damages plus attorneys' fees, costs, expenses, and other damages as a direct result of the Recall. Sargento's claims have been designated as Claim Nos. 32 and 33 on the Court's claim register and as Claim Nos. 83 and 84 on Donlin Recano's claim register.

**b.　The Insurance Policies**

10. Before the Petition Date, the Debtor purchased certain insurance policies, outlined below, that should apply to cover Sargento's losses. While the Debtor, the Official Committee for

1　Unsecured Creditors, and other parties-in-interest may assert that the insurance policies constitute
2　property of the estate under Section 541 of the Code, the policies' *proceeds* are available only to
3　pay Sargento's and similarly-situated Recall claimants' claims against the Debtor. Therefore, the
4　Debtor cannot use these proceeds to fund its reorganization generally or to pay other, non-Recall
5　creditors.

6　　　　11.　　The Debtor's insurance policies are outlined in the table below. Due to the timing
7　of some claims, there might be a question as to which policies apply to the Recall. Overall, the total
8　amount of the applicable coverage is the same. However, the insurance carriers involved may
9　change slightly depending on which period applies. Below is the coverage breakdown for the two
10　periods:

| CARRIER | 2023-24 | 2024-25 |
|---|---|---|
| Arch | Policy # ZAGLB1100403<br>Primary coverage<br>$1M in coverage | Policy # ZAGLB1100404<br>Primary coverage<br>$1M in coverage |
| Indian Harbor | N/A | Policy # SXS0064967<br>Excess over Arch; $1M in coverage |
| Great American | Policy # TUU 0738671 10<br>Excess over Arch<br>$10M in coverage | Policy # TUU 0738671 11<br>Excess over Arch and Indian Harbor<br>$9M in coverage |
| Everest | Policy # XC1EX00444-231<br>Excess over Great American<br>$10M in coverage | Policy # XC5EX01961-241<br>Excess over Great American<br>$10M in coverage |
| Endurance | Policy # ELD30002726502<br>Excess over Great American and Everest<br>$10M in coverage | Policy # ELD30002726503<br>Excess over Great American and Everest<br>$10M in coverage |
| **Total Coverage** | **$31 Million** | **$31 Million** |

22　　　　12.　　While discovery regarding the above policies is ongoing, the foregoing are
23　collectively referred to as the "Policies." Copies of the Declaration pages for the Policies showing
24　the policy numbers and extent of coverage are attached to the Exhibit List as composite **Exhibit 2**
25　and incorporated herein by reference.

26　　　　13.　　Breaking down the above coverage, the Debtor's policy with Arch provides the base
27　layer of insurance coverage, while Indian Harbor, Great American, Everest, and Endurance each
28　provide excess coverage above Arch's policy.

14. The Arch policy states "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The excess policies each contain language along the lines of "[w]e will pay on behalf of the 'Insured' those sums in excess of the 'Retained Limit' that the 'Insured' becomes legally obligated to pay by reason of liability imposed by law or assumed by the 'Insured' under an 'insured contract' because of 'bodily injury, 'property damage,' 'personal injury,' or advertising injury' that takes place during the Policy Period and is caused by an 'occurrence' happening anywhere."

15. In short, the Policies apply only in the event that a claim for bodily injury, personal injury or property damage is made against the Debtor. Claims made against the Debtor for business debts, or otherwise, do not trigger coverage under the Policies. Therefore, the Debtor cannot use the Policies' proceeds to fund its reorganization or pay creditors other than Sargento or other similarly-situated Recall creditors.

16. The Policies are third-party policies that do not cover the Debtor's own damages. On information and belief, neither the Debtor nor its estate have any valid claims against the Policies; rather, all of the Policies provide coverage and are available only to pay losses that are covered under the Policies. Thus, the only means by which Sargento can access the Policies' proceeds outside of a consensual mediation process with the Debtor's insurers is by proceeding to judgment against the Debtor.

17. Further, while none of the carriers have denied coverage, Sargento understands through documents obtained in discovery that some carriers may dispute the extent of coverage under the primary and excess policies. In particular, on October 24, 2024, and May 30, 2025, Great American sent the Debtor reservation of rights letters advising them that it alleged certain policy exclusions may limit the extent of coverage under Great American's excess policy. Arch sent the Debtor reservation of rights letters on April 17, 2024 , and June 28, 2024, where they alleged certainly policy provisions applied to reduce the available policy limit. Regardless, the Policies remain viable to cover the Recall claims once a loss is established.

18. Sargento seeks an order from the Court modifying the stay so that Sargento may: (a) liquidate its claims against the Debtor in the District Court Case; (b) seek payment of its claims

1　from the Policies' proceeds following the entry of a judgment or order against the Debtor in the
2　District Court Case; and (c) receive payment from the proceeds of the Policies to recover some or
3　all of its Recall damages.

4　　　　19.　　In the event this Motion is granted, Sargento will not seek to enforce a monetary
5　recovery against the Debtor other than through the bankruptcy claims process, except to the extent
6　necessary to recover under the Policies. To the extent Sargento's claims are not satisfied from
7　available insurance proceeds, Sargento would retain its unsecured claims against the Debtor in the
8　Bankruptcy Case.

9　**III.　　POINTS AND AUTHORITIES**

10　　　　20.　　The Court should grant Sargento's Motion because "cause" exists allow Sargento to
11　liquidate its claims in the District Court Case and recover from the Policies. The proceeds of the
12　Policies are not property of the Debtor's bankruptcy estate and will not diminish the Debtor's
13　efforts to reorganize.

14　　　　21.　　On the Petition Date, Section 362(a) of the Bankruptcy Code creates an automatic
15　stay with respect to the continuation of "a judicial, administrative, or other action or proceeding
16　against the debtor that was or could have been commenced before the commencement of the case
17　under [the Bankruptcy Code]." 11 U.S.C. § 362(a). The central purpose of the automatic stay is to
18　"prevent [ ] dismemberment of the estate, ensure [ ] orderly liquidation, and grant [ ] the" debtor-
19　in-possession time to reorganize, to analyze the rights and interests of the parties involved and the
20　extent of property available for distribution. *See In re Pintlar Corp.*, 124 F.3d 1310, 1313 (9th Cir.
21　1997).

22　　　　22.　　Section 362(d)(1) of the Bankruptcy Code provides that the Court may grant relief
23　from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "Cause" for relief from the automatic
24　stay is discretionary and is made on a case-by-case basis. *In re Mac Donald*, 755 F.2d 715, 717 (9th
25　Cir. 1985).

26　　　　23.　　Generally, in determining "cause," Section 362(g) places the initial burden on the
27　moving party to establish its prima facie case that modifying the stay is warranted. *In re Rexene*,
28　141 B.R. 574, 577 (Bankr. D. Del. 1992). The burden then shifts to the Debtor to prove cause does

QB\100343211.1

24.　　The Ninth Circuit has recognized a claimant's right to pursue non-bankruptcy litigation solely for the limited purpose of a recovery of insurance proceeds is "cause" to grant relief from the automatic stay. *See Fireman's Fund Ins. Co. v. Ernest James Brady et al. (In re Calsol, Inc.)*, 419 Fed. Appx. 753, 754 (9th Cir. 2011) (citing *Piombo Corp. v. Castlerock Props. (In re Castlerock Props.*), 781 F.2d 159, 163 (9th Cir. 1986). Indeed, according to the legislative history of Section 362 of the Bankruptcy Code, "cause" may be established by "a desire to permit an action to . . . proceed in another tribunal" or a "lack of any . . . interference with the pending bankruptcy case." *Rexene*, 141 B.R. at 576 (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)). Moreover, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Santa Clara County Fair Ass'n, Inc.*, 180 B.R. 564, 566 (9th Cir. BAP 1995) (citing S. Rep. No. 989 95th Cong., 2nd Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836).

25.　　Such is the case here. Sargento only seeks to continue litigation in the District Court Case to liquidate its claims against the Debtor and allow it to pursue insurance proceeds available under the Policies so that it may recover some or all of its Recall damages from those Policies.

26.　　While the 9th Circuit BAP has modified the automatic stay for the singular purpose of allowing a claimant to pursue non-bankruptcy litigation, other Bankruptcy courts have also weighed the following non-exclusive so-called *Curtis* factors when evaluating requests for relief from the automatic stay:

　　　　1.　Whether the relief would result in a partial or complete resolution of the issues;

　　　　2.　The lack of any connection or interference with the bankruptcy case;

　　　　3.　Whether the foreign proceeding involves the debtor as a fiduciary;

　　　　4.　Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under § 510(c);

9. Whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the balance of harm.

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984); *but see In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (While the *Curtis* factors are appropriate for bankruptcy courts to consider, the Panel did not hold that express consideration of each factor is required); *and In re Merriman*, 616 B.R. 381, 389 (9th Cir. BAP 2020) (same.). For the reasons that follow, cause exists to modify the stay in the matter.

27. Applying the above factors, cause exists to lift the automatic stay to allow Sargento to liquidate its claims and pursue any available proceeds under the Policies. Once liquidated, any uninsured balance of any judgment obtained by Sargento would be handled in the Bankruptcy Court in accordance with the ordinary claims process and priority scheme, and would therefore have a minimal impact on the Debtor's reorganization.

28. First, the District Court Case has been pending for nearly two-years. While the parties were preparing for and about to engage in an extensive mediation process involving the Debtor and the Debtor's insurers, the Debtor canceled the mediation just before the Debtor's

Chapter 11 filing. (*Curtis* factors 1 and 11) (Price Dec. at ¶ 9). The present bankruptcy case has been pending since September of 2025, and the Debtor has not taken any steps to pursue the available insurance proceeds under the Policies that would reduce Sargento's, and other similarly situated creditors' claims. Allowing the District Court Case to be litigated to conclusion will allow for the expeditious liquidation of Sargento's claims, which will free up this Court's time and resources and prevent it from having to consider the litigation anew. Thus, judicial economy weighs heavily in favor of allowing the District Court Case to proceed. *See In re Kronemyer*, 405 B.R. at 922.

29. Second, continuing the District Court Case will not substantively interfere with the Bankruptcy Case and the Debtor will be minimally impacted by granting relief because, as described above, the primary and excess carriers have not denied coverage to date (*Curtis* factors 2 and 5). Further, any judgment against the Debtor in the District Court Case will be limited to the recovery against available insurance proceeds, with the balance of such judgment to be asserted through the ordinary claims and priority processes.

30. Third the District Court Case primarily involves the recovery of any available proceeds under the Policies (*Curtis* factor 6). Whether litigation occurs here or in the District Court Case, the Debtor is a necessary party because the Debtor is a mere conduit for the Policy e proceeds in question.

31. Finally, the Debtor's other creditors will not be harmed by granting Sargento's request (*Curtis* factor 7) because any immediate recovery will be limited to the available insurance proceeds, with the balance to be paid through the ordinary claims process in the Bankruptcy Case. *See In re R.J. Groover Const. L.L.C.*, 411 B.R. 460, 465 (Bankr. S.D. Ga. 2008). Neither the Debtor nor the estate will be prejudiced by continuing the District Court Case. Conversely, the Debtor's insurance policies have a value of approximately $31 Million from which to satisfy all or a portion of Sargento's Recall damages, thereby freeing up more of the Debtor's assets to pay the Debtor's other creditors. Thus, the balance of the harm weighs heavily in favor of granting Sargento's Motion.

QB\100343211.1

32. On balance, judicial economy, the prejudice against Sargento, the lack of bankruptcy issues involved, and the District Court's prior involvement and understanding of Sargento's claims raised in the District Court Case all support a finding that "cause" exists to modify the automatic stay to permit the District Court Case to proceed. *See Kronemyer*, 405 B.R. at 921.

## IV. WAIVER OF THE 14-DAY STAY IS APPROPRIATE UNDER BANKRUPTCY RULE 4001(a)(4).

33. Unless the Court orders otherwise, an order granting relief from stay is stayed for 14 days after it is entered. FRBP 4001(a)(4). Sargento requests a waiver of the 14-day stay imposed by Rule 4001(a)(4) so that the District Court Case can move forward expeditiously to the extent permitted by any order granting this Motion.

## V. CONCLUSION

WHEREFORE Sargento respectfully requests that the Court enter an Order substantially in the form attached as **Exhibit 3** to the Exhibit List filed contemporaneously herewith.

RESPECTFULLY SUBMITTED this 3rd day of February, 2026.

        QUARLES & BRADY LLP

        By /s/ L. Katie Mason
            Amelia Valenzuela
            L. Katie Mason
            Randy J. Pflum

        *Attorneys for Sargento Foods Inc.*
        *and Sargento Cheese Inc.*

10

QB\100343211.1